# United States Court of Appeals
## For the First Circuit

No. 15-1667

JEANNETTE BUNTIN,

Plaintiff, Appellant,

v.

CITY OF BOSTON; JAMES MCGONAGLE; SCOTT ALTHER,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Kayatta, Stahl, and Barron,
Circuit Judges.

W.Kendall, with whom Law Office of W.Kendall was on brief, for appellant.
Nicole M. O'Connor, Assistant Corporation Counsel, with whom Eugene L. O'Flaherty, Corporation Counsel, and City of Boston Law Department were on brief, for appellees.

December 29, 2015

**STAHL**, **Circuit Judge**.   Jeannette Buntin's late father, Oswald Hixon, was formerly employed as a mechanic by the City of Boston ("City").   Buntin, proceeding as the administratrix of Hixon's estate, brought suit alleging that the City and Hixon's supervisors, James McGonagle and Scott Alther, discriminated against Hixon on the basis of his race and retaliated against him by terminating his employment.[1]   Concluding that Buntin had not pled facts sufficient to support one claim and had failed to timely exhaust the administrative prerequisites necessary to bring suit on another claim, the district court dismissed Buntin's complaint. After careful review, we AFFIRM in part and REVERSE in part.

## I. Facts and Background

We set forth the facts as alleged in Buntin's complaint. Hixon, who is black, was hired by the City in 2002 to work as a mechanic at the City's public works facility.   At all relevant times, Hixon's immediate supervisors were Alther and McGonagle, both of whom are white.   In 2007, Hixon failed a random drug and alcohol test and was put on probation and required to undergo counselling.   Hixon protested his selection for the test, which he suggested was made on the basis of race.

Roughly four years later, on Friday, February 4, 2011, Alther and McGonagle issued Hixon a written warning for bringing

---

[1] At points, we refer to the City, Alther, and McGonagle collectively as the "Defendants."

his personal vehicle into a City garage for repairs in violation of a City policy.  Hixon protested the warning "vociferously" and pointed out to Alther and McGonagle that white employees had violated the same policy (and other City policies in place at the time) without consequence.

The following Monday, February 7, 2011, Hixon returned to work and was informed that he had been suspended.  Then, on February 10, Hixon was notified that he had been terminated based on a purported violation of the City's drug and alcohol policy, an explanation that the complaint alleges was both untrue and merely a pretext for unlawful discrimination and retaliation.[2]

In January 2013, Hixon filed an application for unemployment benefits with the Massachusetts Department of Unemployment Assistance ("DUA").  Alther and McGonagle appeared at a series of ensuing hearings and allegedly testified falsely that Hixon had been under the influence of controlled substances at work and had refused to submit to a drug and alcohol test.[3]  Soon

---

[2] The complaint contains a number of allegations relating to Hixon's membership in a union of City employees and the union's failure to pursue grievances that he filed relating to the 2007 and 2011 incidents.  Because Hixon did not bring suit against the union, we view these allegations as relevant only to provide context to Hixon's claims against the Defendants.

[3] Although not in the record before us, Buntin represented at oral argument that Hixon was vindicated in an appeal of the DUA proceedings before the Boston Municipal Court, which awarded him benefits and found that he had not been under the influence while at work.

thereafter, Hixon applied for reinstatement with the City, but was not offered a job.

Thereafter, on December 13, 2013, Hixon filed a charge with the Massachusetts Commission Against Discrimination ("MCAD"), which dismissed his charge as untimely.[4]  Hixon passed away in 2014, and Buntin was appointed as the administratrix of his estate.

Buntin brought this lawsuit on behalf of Hixon's estate on February 6, 2015 in Massachusetts Superior Court, asserting a total of seventeen claims against the Defendants under both state and federal law.  While the complaint is confusing at times, Buntin's federal claims appear to arise under 42 U.S.C. §§ 1981 ("Section 1981") and 1983 ("Section 1983").  As we read it, the Section 1981 claim alleges that the Defendants discriminatorily terminated Hixon on the basis of race and, separately, retaliated against him by suspending him and terminating his employment for protesting his discriminatory treatment.[5]  The Section 1983 claim

---

[4] Later, on January 11, 2014, Hixon filed a second MCAD charge premised on the allegedly untrue testimony of Alther and McGonagle at the January 2013 DUA hearings.  This charge too was dismissed as untimely.

[5] In addition, one could perhaps tease out from the complaint a Section 1981 claim premised on the Defendants' creation of a hostile work environment, but we find any such claim to be both inadequately pled and entirely undeveloped on appeal.  See, e.g., Edwards v. Prime, Inc., 602 F.3d 1276, 1300 (11th Cir. 2010) (noting that a hostile work environment claim requires the plaintiff to allege that the harassment endured was "severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment").

appears to be premised on the same allegations of discrimination and retaliation, as well as the City's failure to provide Hixon with a "name-clearing hearing" after Alther and McGonagle's testimony at the 2013 DUA hearings impugned his reputation. The Defendants promptly removed the suit to the district court and then moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

In ruling on the motion to dismiss, the district court considered only the federal claims. Buntin v. City of Boston, No. 15-10556-RGS, 2015 U.S. Dist. LEXIS 60561 (D. Mass. May 8, 2015). The district court concluded that the Section 1981 claim must be dismissed because Buntin failed to exhaust her administrative remedies by filing a timely charge of discrimination with the MCAD before bringing suit. Id. at *10. With respect to the Section 1983 claim, the district court concluded that it too must be dismissed because Buntin failed to plead facts sufficient to support the claim. Id. at *10-11.

## II. Discussion

We review the district court's dismissal of a complaint for failure to state a claim de novo. Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015). In doing so, we assume the truth of Buntin's factual allegations and draw all reasonable inferences in her favor. Id. at 87. To survive a motion to dismiss, the complaint must contain sufficient factual

- 5 -

matter, accepted as true, to state a claim to relief that is "plausible on its face." Id. at 84 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). We are not wedded to the district court's reasoning; rather, we may affirm the dismissal of a claim on any basis made evident by the record. Rocket Learning, Inc. v. Rivera-Sánchez, 715 F.3d 1, 8 (1st Cir. 2013).

A.   Section 1981

Section 1981 provides, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). Buntin's complaint alleges that the Defendants violated Section 1981 by suspending Hixon on February 7, 2011, and terminating him on February 10, 2011, both on account of his race and as retaliation for his having complained that his treatment on February 4, 2011 was discriminatory. As we have said, the district court dismissed this claim solely on the grounds that Hixon failed to file a charge of discrimination with the MCAD in a timely manner prior to bringing suit.

In doing so, however, the district court appears to have conflated the administrative exhaustion requirements imposed by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., with Section 1981, which has no such exhaustion requirement.

Compare Aly v. Mohegan Council, Boy Scouts of Am., 711 F.3d 34, 41 (1st Cir. 2013) (noting that a Title VII plaintiff must file a charge of discrimination with the MCAD within 300 days of the alleged unlawful act prior to bringing suit) (citing 42 U.S.C. § 2000e-5(e)(1)), with Fane v. Locke Reynolds, LLP, 480 F.3d 534, 539 (7th Cir. 2007) (observing that Section 1981 does not require administrative exhaustion). Thus, the district court erred when it imputed an administrative exhaustion requirement to Section 1981 and dismissed Buntin's claim for failure to comply with that requirement.

To the Defendants' credit, they do not argue that the district court's dismissal should be affirmed on the basis of administrative exhaustion. Rather, they urge that we affirm either because the Section 1981 claim was not brought within its statute of limitations, or because the claim was premised merely on conclusory allegations. We reject both arguments.

As an initial matter, we find that Buntin's Section 1981 claim was brought within the applicable four-year statute of limitations. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382 (2004). Hixon was issued a written warning on February 4, 2011 for bringing his personal vehicle into a City garage for repairs, discipline that he protested on grounds that it was applied to him in a discriminatory manner. It was not until February 7, 2011, however, that Hixon returned to work and learned

that he had been suspended, and it was not until February 10, 2011 that he was fired. These dates are important because Buntin filed her lawsuit almost exactly four years later on February 6, 2015.

The Defendants insist that the statute of limitations began to run on February 4, 2011, when Hixon received a written warning. But, claims for discrimination and retaliation accrue when the alleged unlawful act "has a crystallized and tangible effect on the employee and the employee has notice of both the act and its invidious etiology." Shervin v. Partners Healthcare Sys., Inc., 804 F.3d 23, 33 (1st Cir. 2015). Here, Hixon did not learn of his suspension and termination, the alleged unlawful acts, until February 7 and 10, respectively. Therefore, Buntin's lawsuit, launched just as time was about to expire on February 6, 2015, beat the statute of limitations buzzer (albeit just barely).

The Defendants next argue that Buntin's complaint should be dismissed because it relies solely on conclusory allegations. We disagree. Buntin's complaint sets forth, in fairly significant detail, the specific facts and circumstances surrounding the events of February 4 through 10, 2011, during which time Hixon was allegedly disciplined in an unlawfully discriminatory manner, then suspended and terminated discriminatorily and in retaliation for having protested his disparate treatment. These allegations are "specific and factual," and they plausibly suggest that Buntin is entitled to relief on a Section 1981 claim for discriminatory

- 8 -

termination and retaliation.  Cardigan Mountain Sch., 787 F.3d at 84, 87.

In sum, because the district court erred by imposing an administrative exhaustion requirement where none exists, and because we reject the alternative bases for dismissal proffered by the Defendants, we REVERSE the district court's dismissal of Buntin's Section 1981 claim.

B.    Section 1983

Section 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by any person acting under color of state law.  42 U.S.C. § 1983.  Buntin's Section 1983 claim is subject to a three-year statute of limitations.  See Poy v. Boutselis, 352 F.3d 479, 483 (1st Cir. 2003) (citing Mass. Gen. Laws ch. 260, § 2A and explaining that Section 1983 "borrows" state statutes of limitations for personal injury claims).

As we have said, Buntin's complaint is unclear at points. Nevertheless, we discern two possible bases for the Section 1983 claim: (1) Hixon's suspension and termination; and (2) the City's failure to give Hixon a "name-clearing hearing" after Alther and McGonagle impugned his character by allegedly testifying falsely at Hixon's DUA hearings in January 2013.  We conclude, however, that under either theory, dismissal is required.

To the extent that the Section 1983 claim is premised on Hixon's alleged unlawful suspension and termination, any such claim was indisputably brought more than three years after it accrued. To reiterate the point, Hixon's suspension and termination took place in February 2011, and Buntin's complaint was filed some four years later.

On the other hand, a Section 1983 claim premised on the January 2013 testimony of Alther and McGonagle would have been brought within the three-year statute of limitations. However, any such claim would fail on its merits. "[W]here a public-sector employer creates and disseminates a false and defamatory impression about an employee in connection with the employee's discharge. . . . the Constitution's due process protections require the employer to provide the employee with an opportunity to dispute the defamatory allegations." Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 103 (1st Cir. 2002) (citations omitted). Indeed, the "failure to provide an adequate name-clearing forum is actionable under [Section 1983]." Id.; see also Burton v. Town of Littleton, 426 F.3d 9, 14-15 (1st Cir. 2005). Nevertheless, a Section 1983 claim premised on the failure to afford a name-clearing hearing requires that the employee satisfy five elements: (1) the alleged defamatory statement must seriously damage the employee's standing and association in the community; (2) the employee must dispute the statement as false; (3) the statement must have been

- 10 -

intentionally publicized by the government; (4) the stigmatizing statement must have been made in conjunction with an alteration of the employee's legal status, such as the termination of his employment; and (5) the government must have failed to comply with the employee's request for a name-clearing hearing. Wojcik, 300 F.3d at 103 (citations omitted).

As we must, we assume the truth of Buntin's factual allegations and we draw all reasonable inferences in her favor. Cardigan Mountain Sch., 787 F.3d at 87. Yet, even after doing so, the complaint fails to allege any facts whatsoever establishing the third, fourth, and fifth elements of a Section 1983 claim premised on the denial of a name-clearing hearing. As an initial matter, there is no allegation that the City publicized the defamatory statements beyond the DUA hearings at which they were made. What is more, the complaint itself establishes that the alleged defamatory statements were not made in conjunction with an alteration in Hixon's employment status. Rather, they were made some two years after his termination at a hearing regarding Hixon's entitlement to unemployment benefits. Perhaps most importantly, the complaint does not suggest that the City denied Hixon a name-clearing hearing, or that Hixon even requested one in the first place.

Thus, whether premised on Hixon's 2011 termination or on the testimony of Alther and McGonagle at the 2013 DUA hearings, Buntin's Section 1983 claim was properly dismissed.

### III. Conclusion

For the reasons we have described, dismissal of the Section 1983 claim is AFFIRMED, dismissal of the Section 1981 claim is REVERSED, and the case is REMANDED to the district court for further proceedings consistent with this opinion.[6] Costs are taxed in favor of the plaintiff-appellant Jeannette Buntin.

---

[6] Buntin's complaint and brief make passing reference to Title VII, which prompted the City in its brief to dispute the viability of any potential Title VII claim. Although it is far from clear that Buntin is in fact pursuing a Title VII claim, we note that any such claim is foreclosed based on Hixon's failure to file a charge of discrimination with the MCAD within 300 days of his suspension and termination. See Aly, 711 F.3d at 41 ("Failure to exhaust [the] administrative process [of filing an MCAD charge] 'bars the courthouse door.'" (quoting Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005))).