# United States Court of Appeals
## For the First Circuit

No. 16-2265

JEANNETTE BUNTIN,

Plaintiff, Appellant,

v.

CITY OF BOSTON; JAMES MCGONAGLE; SCOTT ALTHER,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Torruella, Selya, and Lynch,
Circuit Judges.

W. Kendall and Law Office of W. Kendall on brief for appellant.
Nicole M. O'Connor, Senior Assistant Corporation Counsel, City of Boston Law Department, and Eugene L. O'Flaherty, Corporation Counsel, on brief for appellees.

May 15, 2017

LYNCH, **Circuit Judge**.  This appeal causes us to decide a question of first impression in this circuit.  We hold that a plaintiff may not bring claims for damages under 42 U.S.C. § 1981 against state actors, including defendants sued in their official capacities as government officials -- here, employees of the City of Boston.  This result is required by Jett v. Dallas Independent School District, in which the Supreme Court held that § 1981 does not provide an implied private right of action for damages against such officials and that "the express cause of action for damages created by [42 U.S.C.] § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units."  491 U.S. 701, 733 (1989).  Congress has not, in the nearly three decades since Jett, demonstrated any intention to compel a different result.  Our holding brings us into agreement with eight other circuits, and into disagreement with only one.  We affirm the district court's dismissal of the action.

I.

A.   Facts and Procedural History

In a prior appeal in this case, we affirmed dismissal of the complaint's § 1983 claims on statute of limitations grounds. The dismissal of those § 1983 claims provides pertinent background. We also found error in the dismissal of the § 1981 claims on the sole ground of failure to exhaust administrative remedies, and we

- 2 -

remanded to the district court.  Buntin v. City of Boston (Buntin I), 813 F.3d 401 (1st Cir. 2015).

We repeat only the essential facts here; our earlier decision provides a more complete description.  See id. at 403–04.  The plaintiff, Jeannette Buntin, represents the estate of her late father Oswald Hixon, a black man, and sued in state court on February 6, 2015.  The case was later removed to federal court.  Hixon was employed by the City of Boston as a repairman in the Department of Public Works ("DPW") and was supervised by defendants Scott Alther and James McGonagle, both of whom are white men.  In 2007, Hixon was suspended for twenty days without pay, after failing a random drug and alcohol test.  Hixon was fired on February 10, 2011.  The reason given was his second violation of the City's drug and alcohol policy.

The complaint alleges that this stated ground for termination was a pretext for racial discrimination and retaliation against Hixon for protesting past discriminatory treatment at work.  It also alleges that in January 2013, after Hixon applied for state unemployment benefits,[1] Alther and McGonagle testified falsely at hearings that Hixon had been under

---

[1]  Hixon himself filed charges with the Massachusetts Commission Against Discrimination on December 13, 2013 and on January 11, 2014.  Each filing was dismissed as untimely.  Buntin I, 813 F.3d at 404 & n.4.

the influence of drugs or alcohol at work and had refused to take a required drug and alcohol test.  Hixon died in 2014.[2]

B.    District Court Proceedings on Remand

On remand from this court, the parties engaged in discovery with respect to Buntin's § 1981 damages claims -- which were all that remained of the lawsuit after Buntin I -- and then filed cross-motions for summary judgment.

On September 19, 2016, the district court granted summary judgment to the defendants.  Buntin v. City of Boston, 209 F. Supp. 3d 368 (D. Mass. 2016).  The court applied Jett, reviewed post-Jett legislation, held that § 1981 provides no implied private right of action for damages against state actors, id. at 369–71, dismissed the federal claims, and remanded the remaining state law claims to state court, id. at 371.

II.

We begin by clearing away a threshold argument made by Buntin.  Although Buntin admits that Buntin I did not explicitly address the question at hand, she argues that Buntin I, by holding that the complaint's factual allegations "plausibly suggest that

_____

[2]    While the complaint originally sought an injunction reinstating Hixon in his old job and forbidding Alther and McGonagle from engaging in "discriminatory and retaliatory conduct" against Hixon, Hixon died even before the complaint was filed, and so those claims are moot.  See Goodwin v. C.N.J., Inc., 436 F.3d 44, 48–49 (1st Cir. 2006).  Only the damages claims remain.

Buntin is entitled to relief on a [§] 1981 claim," 813 F.3d at 406, necessarily also made an implicit holding that § 1981 provides an implied private right of action for damages against state actors. That purported implicit holding, she says, constitutes law of the case. She is mistaken.

"The law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" United States v. Moran, 393 F.3d 1, 7 (1st Cir. 2004) (quoting Arizona v. California, 460 U.S. 605, 618 (1983), supplemented by 466 U.S. 144 (1984)). The doctrine both "prevents relitigation in the trial court of matters that were explicitly or implicitly decided by an earlier appellate decision in the same case" and "binds . . . a successor appellate panel in a second appeal in the same case." Id. Whether the law of the case doctrine applies is a question of law, which we review de novo. United States v. Matthews, 643 F.3d 9, 13 (1st Cir. 2011).

The question we now address was not decided in Buntin I. As to dismissal of the § 1981 claims, Buntin I decided that the district court's sole ground for dismissal -- failure to exhaust administrative remedies -- was not a requirement of § 1981. 813 F.3d at 405. It also rejected the defendants' arguments that Buntin had not brought her § 1981 claims "within the applicable four-year statute of limitations," id., and that her allegations

- 5 -

were so conclusory as to justify dismissal, id. at 405-06. Whether § 1981, standing alone, provides a private right of action for damages was not at issue in Buntin I, and this court's rejection of the defendants' other argued grounds for dismissal did not implicitly confirm that Buntin's § 1981 claims had no other deficiencies not argued to us.

Given the earlier dismissal of the § 1983 claims, the federal courts lack subject-matter jurisdiction if § 1981 does not provide Buntin with a private right of action for damages. See Bonano v. E. Caribbean Airline Corp., 365 F.3d 81, 83 (1st Cir. 2004); see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Because the present argument for dismissal pertains to subject-matter jurisdiction, the defendants are not precluded from raising it. See Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Colombani, 712 F.3d 6, 10 & n.3 (1st Cir. 2013).

III.

We turn to the key issue: whether Jett's reading of § 1981 controls or has since been reversed by Congress. Because the question is one of statutory interpretation, we exercise de novo review. See Bonano, 365 F.3d at 83.

Joining the majority of our sister circuits,[3] we hold that § 1981, as the Supreme Court held in Jett, provides no implied private right of action for damages against state actors.  That is so even given Congress's post-Jett amendment of the statute via the Civil Rights Act of 1991.

A.   Background: Jett and the Civil Rights Act of 1991

The present-day § 1981(a) provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  The rights protected by that sentence -- which for many decades was the only sentence of § 1981 -- were first recognized by Congress in 1866, in the immediate aftermath of the Civil War.  See Civil Rights Act of 1866, § 1, 14 Stat. 27, 27; Jett, 491 U.S. at 713–22.

---

[3]    See Brown v. Sessoms, 774 F.3d 1016, 1020–21 (D.C. Cir. 2014); Campbell v. Forest Pres. Dist., 752 F.3d 665, 671 (7th Cir. 2014); McGovern v. City of Philadelphia, 554 F.3d 114, 121–22 (3d Cir. 2009); Arendale v. City of Memphis, 519 F.3d 587, 598–99 (6th Cir. 2008); Bolden v. City of Topeka, 441 F.3d 1129, 1137 (10th Cir. 2006); Oden v. Oktibbeha County, 246 F.3d 458, 463–64 (5th Cir. 2001); Butts v. County of Volusia, 222 F.3d 891, 894–95 (11th Cir. 2000); Dennis v. County of Fairfax, 55 F.3d 151, 156 n.1 (4th Cir. 1995).

In 1871, Congress enacted the direct predecessor of the present-day § 1983. See Civil Rights Act of 1871, § 1, 17 Stat. 13, 13. That portion of the 1871 Act "was seen by both opponents and proponents as amending and enhancing the protections of the 1866 Act by providing a new civil remedy for its enforcement against state actors." Jett, 491 U.S at 724.

Jett, in pertinent part, addressed whether that single sentence of § 1981 -- that is, present-day § 1981(a) -- "provides an independent federal cause of action for damages against local government entities." Id. at 705. After extensively analyzing the statutory text, statutory structure, and legislative history, the Court held that "Congress intended that the explicit remedial provisions of § 1983 be controlling in the context of damages actions brought against state actors alleging violation of the rights declared in § 1981." Id. at 731. The Court explained that its previous cases inferring a § 1981 damages remedy against private actors were distinguishable because Congress had provided no remedy for that sort of violation. See id. at 732. By contrast, "Congress ha[d] established its own remedial scheme" for suits against state actors when it enacted § 1983. Id. at 731.

Two years after Jett, § 1981 was amended by the Civil Rights Act of 1991 ("the 1991 Act"), Pub. L. No. 102-166, 105 Stat. 1071. The 1991 Act stated that additional remedies and protections were needed to respond to discrimination in employment, id. § 2,

and that one of its purposes was "to respond to recent decisions of the Supreme Court by expanding the scope of relevant civil rights statutes in order to provide adequate protection to victims of discrimination," id. § 3(4). To that end, section 101 of the 1991 Act added two new subsections to 42 U.S.C. § 1981:

> (b) "Make and enforce contracts" defined
>
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
>
> (c) Protection against impairment
>
> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981(b)-(c).

A report issued by the House Committee on Education and Labor, dated April 24, 1991, stated that the new § 1981(b) was meant to "overrule Patterson," a case decided one week before Jett in which the Court had found § 1981 inapplicable to racial harassment or discrimination that occurred after a contract's formation. H.R. Rep. No. 102-40(I) ("House Rep. I"), at 92 (1991), reprinted in 1991 U.S.C.C.A.N. 549, 630, 1991 WL 70454; see Patterson v. McLean Credit Union, 491 U.S. 164 (1989). The report also stated that the new § 1981(c) was meant to "codify the long-standing principle established in Runyon v. McCrary, 427 U.S. 160

(1976), that [§] 1981 reaches private as well as governmental conduct."  House Rep. I, at 141; see also id. at 92.

A second report, issued by the House Committee on the Judiciary on May 17, 1991, reiterated both points.  H.R. Rep. No. 102-40(II) ("House Rep. II"), at 2, 35-37 (1991), reprinted in 1991 U.S.C.C.A.N. 694, 694-95, 728-31, 1991 WL 87020.  The Judiciary Committee's report cited and described several other then-recent Supreme Court cases that the 1991 Act was meant either to codify or to repudiate.  See id. at 2.

Neither of the House Reports mentioned Jett even in passing.  Nor did the 1991 Act itself.

Since the 1991 Act, nine federal courts of appeals have decided whether § 1981, as amended by the 1991 Act, now provides an implied private right of action for damages against state actors.  Only the Ninth Circuit has held that Congress implicitly overruled Jett by adding the new § 1981(c) via the 1991 Act.  Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1205, 1214 (9th Cir. 1996).[4]  Eight others have reached the opposite conclusion and reaffirmed Jett as good law.[5]

---

[4]    The Ninth Circuit nonetheless affirmed dismissal, because the plaintiff had alleged only "that the county 'failed to enforce' state and county bidding requirements," and not "that this failure . . . constituted an official policy or custom of the county." See African Am. Contractors, 96 F.3d at 1215-16 (applying Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)).

[5]    The Second Circuit has taken heed of the question but has not answered it to date.  See Howard v. City of New York, 602

B.    Congress Has Not Overruled Jett or Added an Implied Private Right of Action for Damages to § 1981

To determine whether the 1991 Act overruled Jett and created an implied private right of action for damages against state actors, we examine Congress's intent.  Because "private rights of action to enforce federal law must be created by Congress[,] [t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." Alexander v. Sandoval, 532 U.S. 275, 286 (2001) (citation omitted); see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284 (2002); Bonano, 365 F.3d at 84.

Looking first to the statutory text and structure of the § 1981 amendments, we find no evidence that Congress meant for the 1991 Act to overrule Jett or provide a new private right of action for damages against state actors.  Although the new § 1981(c) clarified that the "rights protected by [§ 1981] are protected against impairment by nongovernmental discrimination and impairment under color of State law," 42 U.S.C. § 1981(c) (emphasis added), that language simply clarifies the scope of the rights that § 1981 confers.  The Ninth Circuit's holding that the new

---

F. App'x 545, 546 n.1 (2d Cir. 2015) (per curiam) (unpublished summary order); Anderson v. Conboy, 156 F.3d 167, 176 n.17, 178 n.19 (2d Cir. 1998), cert. granted sub nom. United Bhd. of Carpenters & Joiners of Am. v. Anderson, 526 U.S. 1086 (1999), and cert. dismissed, 527 U.S. 1030.

language created an implied remedy against state actors independent of § 1983 elides "the distinction between rights and remedies."[6]  McGovern, 554 F.3d at 119.  Jett's logic as to the statutory text and structure still applies with full force: because Congress "established its own remedial scheme" in § 1983 for civil rights violations by state actors, 491 U.S. at 731, federal courts should not exercise their limited power "to imply or create [additional] remedies" via § 1981, id. at 732.  See Campbell, 752 F.3d at 671; McGovern, 554 F.3d at 121–22.

The legislative history of the 1991 Act is consistent with our interpretation of the Act's text and structure.  The 1991 Act explicitly cited several Supreme Court holdings that the Act was meant either to codify or to repudiate.  Similarly, although the House Reports expressed a broadly stated concern that recent Supreme Court decisions had too sharply limited protections

_____

[6]     We believe that the Ninth Circuit also erred in resolving the § 1981 issue by applying the four-factor inquiry of Cort v. Ash, 422 U.S. 66, 78 (1975).  The Supreme Court has clarified since Cort that whether Congress intended to provide a private right of action -- which is one of the Cort factors -- is "[t]he central inquiry," and that the other three factors are entitled to considerably less weight.  Touche Ross & Co. v. Redington, 442 U.S. 560, 575–76 (1979); see also, e.g., Alexander, 532 U.S. at 286–87 ("Statutory intent . . . is determinative.  Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." (citations omitted)); McGovern, 554 F.3d at 118–19 (discussing Alexander and other Supreme Court decisions that have "altered [Cort] virtually beyond recognition" (quoting Wisniewski v. Rodale, Inc., 510 F.3d 294, 299 (3d Cir. 2007))).

against employment discrimination and other civil rights violations, the House Reports went on to cite those disfavored decisions by name -- including several from spring 1989, just two years earlier and within mere weeks or months of the Jett decision. See, e.g., House Rep. II, at 2-4; House Rep. I, at 92, 141. The new § 1981(c), the House Judiciary Committee's Report explained, was meant to reaffirm and codify Runyon's holding; there was no mention of either Jett or a new right of action. See House Rep. II, at 35-37.

Indeed, conspicuously, Jett is not cited or discussed anywhere in the 1991 Act's legislative history. See Bolden, 441 F.3d at 1137 ("[O]nly one who never relies on committee reports would fail to be impressed by the total absence in the committee reports of any mention of Jett . . . ."). That silence is striking in light of the numerous other Court decisions mentioned explicitly. We conclude that § 1983 remains "the exclusive federal damages remedy" for § 1981 violations by state actors, Jett, 491 U.S. at 735, and that the district court correctly entered judgment for the defendants on that basis.

*    *    *

One loose end remains. Buntin purports to sue Alther and McGonagle not only in their official capacities but also in their individual capacities. She has not alleged, however, that they took any relevant actions "outside of the scope of their

- 13 -

supervisory roles at the DPW."  Buntin, 209 F. Supp. 3d at 371 n.3.  We agree with the district court that Buntin's allegations do not support claims against Alther and McGonagle outside their official capacities.  See Oden, 246 F.3d at 464-65 & n.5 ("[W]hen a plaintiff asserts a cause of action under § 1981 for discrimination in the terms and conditions of a municipal employment contract, the proper defendant is the government employer in his official capacity."); see also Lewis v. Clarke, No. 15-1500, slip op. at 6 (U.S. Apr. 25, 2017) (distinguishing between official-capacity claims and individual-capacity claims).

IV.

The judgment is affirmed.  No costs are awarded.