DOCKET NO: RE-18-205

| | | |
|---|---|---|
| TITO MASONRY & CONSTRUCTION, LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | ORDER ON DEFENDANT'S MOTION FOR RECONSIDERATION |
| v. | ) ) | |
| PORTLAND HOUSING AUTHORITY, CHERYL SESSIONS, RICHARD BIGGS and MARK B. ADELSON, | ) ) ) | |
| Defendants | | |

Before the Court is Defendant's Motion for Reconsideration of Defendant's Motion for Partial Summary Judgment. After due consideration, the Defendant's Motion for Reconsideration is denied.

## I. Factual Background:

A complete factual overview of this case is more fully set forth in this court's Order on Defendants' Motion for Partial Summary Judgment, dated December 17, 2019. The facts relevant to Defendants' Motion for Reconsideration are as follows:

The Plaintiff company is run by an individual who identifies as an African and Hispanic-American, Moravia Drice (Mr. Drice), and the company is staffed predominantly by people of color. Prior to the contract at issue in this lawsuit, the Plaintiff completed a number of construction contracts for Defendant Portland Housing Authority ("Housing Authority") without issue. In February 2017, the Housing Authority employed Co-Defendant, Richard Biggs, to oversee certain Housing Authority construction contracts. The Housing Authority, through Biggs, contracted with the Plaintiff to complete work at one of the Housing Authority's properties in March, 2017.

The Plaintiff alleges that Mr. Biggs made multiple racially charged comments toward the Plaintiff during the course of the 2017 contract. Plaintiff was ordered to stop all work on the project in March, 2018, and the contract was terminated shortly thereafter. The Housing Authority justified the contract termination on the grounds that there were apparent defects in the Plaintiff's workmanship. The Housing Authority agreed to extend Plaintiff's contract on the condition that Plaintiff correct the noted defects by April 17, 2018.

The Plaintiff notified Mr. Biggs via email on April 17, 2018, that Plaintiff would be unable to complete certain exterior projects due to cold and rainy weather. Mr. Biggs did not indicate that he received the email nor did he otherwise respond to the Plaintiff. Mr. Biggs performed a subsequent inspection of the project site without being accompanied by the project's architect. The Plaintiff challenges whether Mr. Biggs is qualified to form knowledgeable or informed opinions regarding Plaintiff's workmanship. (PRSMF ¶¶ 24, 25, 32, 33, 35, 38.) The Plaintiff's contract was again terminated on April 17, 2018. The Housing Authority justified the second contract termination on the grounds that the Plaintiff failed to complete the required corrections by the April 17 deadline.

The Plaintiff brought this lawsuit alleging, among other things, unlawful discrimination under 42 U.S.C. § 1981 (Counts III and IV). The Defendant filed a Motion for Partial Summary Judgment on Counts III and IV. This court denied Defendant's Motion. The Defendant has filed the present Motion for Reconsideration, requesting that this court vacate its previous order and grant Defendant's Motion for Partial Summary Judgment.

## II. Reconsideration and Summary Judgment Standards

A motion for reconsideration "shall not be filed unless required to bring to the court's attention an error, omission, or new material that could not previously have been presented."

M.R. Civ. P. 7(b)(5). This rule is intended to "deter disappointed litigants from seeking to reargue points that were or could have been presented to the court on the underlying motion." *Shaw v. Shaw*, 2003 ME 153, ¶ 8, 839 A.2d 714.

A party is entitled to summary judgment when review of the parties' statements of material facts and the record to which the statements refer, demonstrates that there is no genuine issue as to any material fact in dispute. *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821; M.R. Civ. P. 56(c). A contested fact is "material" if it could potentially affect the outcome of the case. *Id.* A "genuine issue" of material fact exists if the claimed fact would require a factfinder to "choose between competing versions of the truth." *Id.* (quotations omitted). The court reviews the evidence in the light most favorable to the non-moving party. *Id.*

## III. Discussion:

The Defendant presents three separate arguments as to why the court should vacate its previous order and grant Defendant's Motion for Partial Summary Judgment: (1) the court's reasoning was inconsistent with the First Circuit's jurisprudence involving claims arising under 42 U.S.C. § 1981; (2) the evidence the court cited as grounds for denying Defendant's Motion is insufficient to infer racial animus; and (3) the United States Supreme Court's ruling in *Comcast Corp. v. Nat'l. Ass'n of African American-Owned Media*, decided after this court's ruling, materially changed the Plaintiff's burden of proof on its Section 1981 claims.

### A. Section 1981 Claims

42 U.S.C. § 1981 prohibits racial discrimination in the making and enforcement of contracts and provides a cause of action for those who experience racial discrimination while contracting with a government entity. 42 U.S.C. §§ 1981, 1983; *Buntin v. City of Boston*, 857 F.3d 69, 70 (1st Cir. 2017). Discrimination claims arising under Section 1981 require a three-part,

burden-shifting analysis. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). In part one, the plaintiff must present prima facie evidence that: (1) the plaintiff is a member of a protected class; (2) plaintiff is qualified for the job at issue; (3) plaintiff suffered an adverse employment action at the hands of his or her employer; and (4) there is evidence of a causal connection between plaintiff's membership in a protected class and the adverse employment action. *Id.* If the plaintiff makes a sufficient prima facie showing, the burden shifts to the defendant to rebut this presumption of discrimination by presenting evidence of a legitimate, non-discriminatory reason for the adverse employment action. *Id.* Then, if the Defendant successfully demonstrates a legitimate, non-discriminatory grounds for the adverse employment action, the plaintiff again has the burden to show that the defendant's proffered reason was a pretext and that the real reason for the adverse employment action was indeed racial animus. *Id.* The Defendant here argues that the court misapplied the burden shifting framework of the last two factors in that the court failed to make the requisite finding that Defendant's proffered justification was both a pretext *and* that Plaintiff's contract was terminated on discriminatory grounds.

In its ruling, this court found that the following facts gave rise to a presumption of discrimination for the purpose of summary judgment: Biggs' racially motivated comments; Biggs' allegedly improper inspections of the Plaintiff's worksite; Defendants' refusal to extend the April 17 deadline despite relevant weather concerns beyond Plaintiff's control; and the fact that the Plaintiff had never been terminated from a Housing Authority contract prior to Biggs' involvement with the Plaintiff's contracts. The court relied on these facts to rule that the Plaintiff had made a prima facie showing of racial animus and that there was a genuine issue of material fact regarding whether the Defendant's purported non-racial motivations for terminating Plaintiff's contract were pretextual.

Upon re-examination of the *McDonnell Douglas Corp.* burden shifting framework, the court reaffirms its prior ruling. The burden of persuasion at all times remains with the Plaintiff, which means that the Plaintiff must make a sufficient showing that the Defendant's purported non-discriminatory grounds for terminating Plaintiff's contract was pretextual and that racial discrimination was indeed the motivation for that adverse action. *See Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 56 (1st Cir. 1999). "This burden is often broken into two separate tasks. The plaintiff must present sufficient evidence to show both that the employer's articulated reason for laying off the plaintiff is a pretext and that the true reason is discriminatory." *Id.* "[T]here can be no mechanical formula at the third stage of the *McDonnell Douglas/Burdine* framework." *Id.* The evidence to support the prima facie case in step one, "and the significance of the disbelieved pretext will vary from case to case depending on the circumstances." *Id.* However, the evidence presented to demonstrate that the Defendant's proffered justification was pretextual may be the same evidence used to demonstrate that racial animus was the cause of the adverse action for the purposes of step three. *See Id.* at 57 ("Plaintiffs may use the same evidence to support both conclusions, provided that the evidence is adequate to enable a rational factfinder reasonably to infer that unlawful discrimination was a determinative factor in the adverse employment action.")

Here, the Defendant's purported reasons for terminating Plaintiff's contract were the Plaintiff's failure to meet deadlines in a timely manner, and alleged defects in the Plaintiff's workmanship. It is undisputed that the Plaintiff did not complete certain contractual obligations in the time permitted. However, the Plaintiff presented evidence that this grounds for termination was pretextual because the Plaintiff's failure to complete the tasks on time was due to weather conditions beyond Plaintiff's control. Additionally, the Plaintiff brought these weather concerns to the attention of Mr. Biggs in Plaintiff's request for an extension of time. Plaintiff's request went

unanswered. Moreover, Mr. Biggs, who is also alleged to have made a number of racially charged comments toward the Plaintiff, conducted an inspection of Plaintiff's workmanship outside the presence of the architect actually assigned to the project.[1] Accordingly, the decision to terminate Plaintiff's contract could have indeed rested solely on the opinion of Mr. Biggs, who has demonstrated a pattern of conduct that appears motivated by racial stereotypes.

The court ruled that this evidence creates a sufficient issue of material fact regarding whether racial animus was indeed the cause of Plaintiff's contract termination and that issues of witness credibility, including the testimony of Mr. Biggs, is one that should be submitted to a fact finder. This ruling does not absolve the Plaintiff of its burden to present evidence both that the Defendants' purported grounds for terminating Plaintiff's contract was pretextual and that the true motivation for terminating that contract was indeed race discrimination. Instead, the court ruled that Mr. Biggs' failure to accommodate Plaintiff for circumstances outside of Plaintiff's control and issues related to Mr. Biggs' qualifications and inspections, when combined with Mr. Biggs' racially charged comments, create a genuine issue of material fact regarding pretext and discriminatory intent. All inferences must be made in favor of the Plaintiff as the non-moving party, including those that can be made out of the disputed credibility of Mr. Biggs. The court makes no findings as to whether Mr. Biggs was qualified to inspect Plaintiff's workmanship. Because a jury could infer that the decision to terminate Plaintiff's contract rested solely with Mr. Biggs, his disputed credibility and racially charged comments create genuine issues of material fact regarding pretext and discriminatory intent. Summary judgment is inappropriate under these circumstances.

---

[1] Indeed, the qualifications of Mr. Biggs to make determinations regarding Plaintiff's workmanship are controverted in the record.

## B. Evidence of Racial Animus

The Defendant next argues that the court should reconsider its ruling that the Plaintiff made a prima facie showing of racial animus under the first prong of the *McDonnell Douglas Corp.* framework because the comments made by Mr. Biggs are insufficient grounds to infer racial bias. Mr. Biggs is alleged to have made the following comments to Mr. Drice, who is a person of color: that Mr. Drice should "give up construction and just play the lottery instead;" that Mr. Drice would "be better off playing sports like football;" and suggested that Mr. Drice "must spend all of [his] time at the gym instead of working." (PRSMF ¶ 13.) It is also alleged that Mr. Biggs refused to provide Plaintiff with keys to the project site, even though such is alleged to be a common practice by the Housing Authority. (PRSMF ¶¶ 17, 19.) It is alleged that Mr. Biggs justified his refusal to entrust keys to the Plaintiff by stating: "[h]ow do I know you or your guys will not try to sleep in the unit?" (PRSMF ¶ 21.)

The Plaintiff argues that Mr. Biggs statements regarding Mr. Drice call upon "well-worn" racial stereotypes to disparage Mr. Drice's work ethic. The notion that people of color are either lazy or should be regulated to certain areas of society, such as athletics, is certainly a familiar form of racial stereotyping. Such stereotypes, or other forms of unwritten or implicit assumptions "skew perceptions and judgments" and are incompatible where "the entire spectrum of desperate treatment is prohibited." *Thomas*, 183 F.3d at 61. The court previously held that Mr. Biggs' statements, which implicate improper assumptions based upon race, are sufficient evidence of racial animus for the purposes of partial summary judgment. The court has not been presented with evidence that would justify altering that ruling on a Motion for Reconsideration.

## C. But-For Causation

Finally, the Defendant argues that, in a decision issued after this court's ruling on Defendant's Motion, the Supreme Court of the United States clarified the applicable standard on Plaintiff's Section 1981 claim such that reconsideration is warranted here. *See Comcast Corp v. Nat'l. Ass'n of African American-Owned Media*, 589 U.S. ___, 140 S. Ct. 1009 (2020). In *Comcast*, the Supreme Court held that race discrimination must be the but-for cause of the injury alleged. *Comcast Corp.*, 589 U.S. ___, 140 S. Ct. at 1014-15. The Defendant here alleges that this court improperly held that the alleged racial animus could have played a role in the termination of Plaintiff's contract but did not find that the racial animus could have been the but-for cause.

The court finds Defendant's argument unavailing. There remains a genuine issue of material fact as to whether racial animus was indeed the but-for cause of Plaintiff's contract termination. As the court previously observed, there is a question as to whether the decision to terminate Plaintiff's contract rested solely with Mr. Biggs, whose own conduct raises questions of racial animus. Mr. Biggs' credibility, as well as the other factual issues outlined above, are questions of fact that are properly submitted to a trier of fact. The court also notes that the purpose of the *McDonnell Douglas* framework is to "allow[] plaintiffs to prove discrimination by circumstantial evidence." *Thomas*, 183 F.3d at 58. Based on the circumstantial evidence presented, a reasonable juror could infer that discrimination was the but-for cause of Plaintiff's contract termination. Accordingly, there is a genuine issue of material fact regarding whether racial animus was the but-for cause of Plaintiff's contract termination and partial summary judgment would be inappropriate on such grounds.

**IV. Conclusion:**

The standards on a Motion for Reconsideration are designed to discourage disappointed litigants from rearguing issues that either were or could have previously been decided. The court has not been presented with evidence that would compel it to alter or amend its prior ruling on Defendant's Motion for Partial Summary Judgment because there remain genuine issues of material fact regarding whether the grounds for terminating Plaintiff's contract were discriminatory.

Defendant's Motion for Reconsideration is DENIED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: August 9, 2021

Mary Gay Kennedy, Justice
Maine Superior Court



STATE OF MAINE
CUMBERLAND, ss.

TITO MASONRY &
CONSTRUCTION, LLC,

      Plaintiff

      v.

PORTLAND HOUSING
AUTHORITY, CHERYL
SESSIONS, RICHARD BIGGS,
AND MARK B. ADELSON,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-2018-205


ORDER ON DEFENDANTS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT

REC'D CUMB CLERKS OFC
DEC 17 '19 AM 9:41

Before the Court is Defendants Portland Housing Authority (PHA), Michael

Adelson, Richard Biggs and Cheryl Sessions (collectively "Defendants'")[1] motion for

partial summary judgment with respect to Counts III and IV of Plaintiff Tito Masonry &

Construction, LLC's, ("Tito Masonry's") Complaint. For the following reasons,

Defendants' Motion is denied.


I.    **Summary Judgment Factual Record**

The following facts establish the record relevant to this Court's order on

Defendants' Motion. Plaintiff Tito Masonry is a Portland based company founded by

Moravia Drice ("Mr. Drice"), an African-American and Hispanic-American U.S. Citizen

from Haiti. (Opp. S.M.F. ¶¶ 1-3; Supp.'g S.M.F. ¶ 1.)[2] At any given time, over half of Tito

---

[1] Richard Biggs is the PHA Director of Maintenance, Cheryl Sessions is the Deputy
Executive Director, and Mark Adelson is the Executive Director. (Pl.'s Compl. ¶¶ 3-5.)
[2] The parties are reminded that citations to the complaint cannot serve as evidentiary
support for a statement of material fact. The factual basis to support or oppose a motion
for summary judgment motion can be provided by "(i) any statement under oath
including affidavits, interrogatory responses, depositions, and hearing transcripts; or (ii)
any other document that would have evidentiary significance in a trial, such as a

1 of 9

For Plaintiff:
Asha Echeverria, Esq. & Zachary Brandwein, Esq.

For Defendant(s): Jeffrey Edwards, Esq.

Masonry's employees are people of color. (Opp. S.M.F. ¶ 9.) Defendant Richard Biggs ("Mr. Biggs") became the Director of Maintenance in February 2017, and in this role, oversees construction contracts for PHA. (Supp.'g S.M.F. ¶¶ 23-24.) Tito Masonry claims it has successfully completed over thirty projects for PHA before Mr. Biggs began overseeing its contracts. (Opp. S.M.F. ¶¶ 6, 12).[3] In March 2017, Tito Masonry entered into a contract with PHA to begin work on buildings owned and operated by the PHA (hereinafter the "East Bayside Project"). (Supp.'g S.M.F. ¶ 2.) Work was to commence on May 1, 2017, and be completed by June 9, 2017, although Tito Masonry did not begin until early June 2017. (Supp.'g S.M.F. ¶¶ 32-35.) Sometime around March 29, 2018, Steven Thomas, an architect employed by PHA, and Mr. Biggs, inspected the property and noted numerous defects and deficiencies.[4] (Supp.'g S.M.F. ¶ 14.) As a result of the inspection, Defendant Cheryl Sessions ("Ms. Sessions") ordered Tito Masonry to stop all work on the project, and on April 3, 2018, terminated the contract. (Supp.'g S.M.F. ¶¶ 37, 38.)

Shortly thereafter, PHA rescinded the termination and executed Change Order #4. (Supp'g. S.M.F. ¶ 10.) The extension required Tito Masonry to correct defects noted by the architect by 9:00 a.m. on April 17, 2018, and pass review by the architect and Mr. Biggs. (Supp.'g S.M.F. ¶¶ 26, 41; Opp. S.M.F. ¶ 27.) Tito Masonry was aware that a failure

---

stipulation, a public record, a response to requests for admissions, or an authentic but unsworn statement by a party opponent." *MSBA Practice Series Maine Rules of Civil Procedure* 386 (Hon. Donald G. Alexander et al. eds., 2008).

[3] Defendants, in their Response to Plaintiff's Statement of Material Facts, attempt to partially admit the statement. The Maine Rules of Civil Procedure prohibit such parsing. An admission must begin with the designation "'[a]dmitted' . . . and shall end with such designation." M.R. Civ. P. 56(h)(2). If a moving party does not expressly admit a fact, then the party must controvert it through a denial or a qualification. *Stanley v. Hancock Cty. Comm'rs*, 2004 ME 157, ¶ 18, 864 A.2d 169.

[4] Although Plaintiff contests the architect's assessment of the work, the denial does not properly controvert the fact that the inspection occurred and that Mr. Thomas, in his opinion, noted defects.

to meet the April 17, 2018 deadline would result in its termination from the East Bayside Project. (Supp.'g S.M.F. ¶¶ 27, 43.)

On April 15, 2018, Tito Masonry emailed Defendants stating that it may need an additional day to complete exterior work due to anticipated cold and rainy weather. (Supp.'g S.M.F. ¶ 15; Opp. S.M.F. ¶¶ 28-29.) On April 17, 2018, Tito Masonry emailed Defendants to confirm that adverse weather conditions delayed the project and requested until the end of the week. (Supp.'g S.M.F. ¶ 15; Opp. S.M.F. ¶ 34.) Defendants did not respond to either request. (Opp. S.M.F. ¶¶ 29, 31.)

Mr. Drice became concerned that the East Bayside Project would be inspected without him. (Opp. S.M.F. ¶ 34.) That afternoon, Mr. Drice arrived at the property and found Mr. Biggs inspecting the property without an architect present. (Opp. S.M.F. ¶¶ 33, 39.) Mr. Drice confronted Mr. Biggs after observing, in his opinion, Mr. Biggs incorrectly measuring a step. (Opp. S.M.F. ¶¶ 33-36.) Shortly thereafter, Mr. Biggs walked off the property stating, "[y]ou will hear from me," in regards to Tito Masonry's request for an extension. (Opp. S.M.F. ¶ 37.) Ms. Sessions emailed Tito Masonry later that day terminating the contract. (Opp. S.M.F ¶ 40.) PHA hired a replacement contractor to complete the project. (Opp. S.M.F. ¶ 48.)

Defendants cited Tito Masonry's failure to meet the deadline and correct defects, however, Tito Masonry claims that Defendants' decision to terminate the contract was motivated by racial discrimination. (Pl.'s Opp. to Def.s' Mot. Summ. J. 1.) Mr. Drice claims that he had never experienced the degree of discrimination he encountered as a contractor during his time on the East Bayside Project – largely due to Mr. Biggs's alleged discriminatory conduct and racially motivated comments. (Opp. S.M.F. ¶ 11.) Mr. Biggs regularly ignored texts, phone calls, and emails from Mr. Drice. (Opp. S.M.F. ¶ 26.) It is Mr. Biggs's common practice to provide keys to contractors to access property. (Opp.

S.M.F. ¶ 17.) Yet, after multiple requests, Tito Masonry claims it was denied keys to access another cite it was working on, referred to as the "66 Purchase Street" property. (Opp. S.M.F. ¶ 19.)

On June 6, 2018, Tito Masonry met with Defendants to contest the contract's termination and inform the Executive Director of PHA Mark Adelson ("Mr. Adelson") of Mr. Biggs's alleged racially motivated comments, improper inspections, and failure to respond to communications. (Supp.'g S.M.F. ¶ 6; Opp. S.M.F. ¶¶ 42-43.) Defendants discussed the allegations of racial discrimination for about ten to fifteen minutes. (Opp. S.M.F. ¶ 47.) After fully considering the matter, Mr. Adelson sent a letter to Tito Masonry affirming the contract's termination. (Supp.'g S.M.F. ¶ 21; Drice Dep. Ex. 28.)

## II. Standard of Review

A party is entitled to summary judgment when review of the parties' statements of material facts and the record to which the statements refer, demonstrates that there is no genuine issue as to any material fact in dispute, and that the moving party is entitled to judgment as a matter of law. *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821; M.R. Civ. P. 56(c). A contested fact is "material" if it could potentially affect the outcome of the case. *Id.* A "genuine issue" of material fact exists if the claimed fact would require a factfinder to "choose between competing versions of the truth." *Id.* (quoting *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504). When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.*

Each party's statements must include a reference to the record where "facts as would be admissible in evidence" may be found. M.R. Civ. P. 56(e). A party's opposing statement of material facts "must explicitly admit, deny or qualify facts by reference to

each numbered paragraph, and a denial or qualification must be supported by a record citation." *Stanley v. Hancock Cty. Comm'r*, 2004 ME 157, ¶ 13, 864 A.2d 169. The evidence offered in support of a genuine issue of material fact "need not be persuasive at that stage, but the evidence must be sufficient to allow a fact-finder to make a factual determination without speculating." *Estate of Smith v. Cumberland Cty.*, 2013 ME 13, ¶ 19, 60 A.3d 759.

## III. Discussion

### A. Racial Discrimination Under 42 U.S.C. § 1981

Counts III and IV of Plaintiff's Complaint are predicated on a violation of 42 U.S.C. § 1981,[5] which prohibits public and private racial discrimination in certain activities, including the making and enforcement of contracts.[6] *Garrett v. Tandy Corp.*, 295 F.3d 94, 98 (1st Cir. 2002). A claim under Section 1981 allows for distinct claims, including disparate treatment, retaliation, and hostile work environment. *Bhatti v. Trs. of Boston Univ.*, 659 F.3d 64, 70 (1st Cir. 2011). Plaintiff's Section 1981 claim is based on disparate treatment. (Pl.'s Compl. ¶¶ 74-82.)

Absent direct evidence of discrimination, the *McDonnell Douglas* burden-shifting framework has been used to evaluate a Section 1981 claim.[7] *Bhatti*, 659 F.3d at 70;

---

[5] 42 U.S.C. § 1981(a) states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

[6] Section 1983 provides the mechanism to sustain a Section 1981 claim against state actors. *Buntin v. City of Boston*, 857 F.3d 69, 70 (1st Cir. 2017).

[7] It's possible that the Law Court would eliminate the *McDonnell Douglas* burden-shifting framework in this case as it has for summary judgment motions in retaliation claims made under the Maine Whistleblowers' Protection Act. *See Brady v. Cumberland Cty.*, 2015 ME 143, ¶¶ 25-39, 126 A.3d 1145. The Court reasoned that a *prima facie* showing in a WPA retaliation case already contains an element of causation, rendering the second and third

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Section 1981 cases may borrow from Title VII case law. *Id.* To survive summary judgment, Plaintiff must present *prima facie* evidence of discrimination: (1) Plaintiff is a member of a protected class; (2) Plaintiff is qualified for the job; (3) Plaintiff suffered an adverse employment action at the hands of his employer; and (4) there is evidence of a causal connection between Plaintiff's membership in a protected class and the adverse employment action. *Id.* If Plaintiff presents *prima facie* evidence of discrimination, this creates a presumption of discrimination that Defendants may rebut by presenting evidence of a legitimate, non-discriminatory reason for their action. *Id.* If Defendants succeed in this showing, then the burden shifts back to Plaintiff to offer evidence that the proffered justification was a pretext, disguising discriminatory animus. *Id.* Under this framework, "the real battleground in summary judgment motions is in the application of the third step" where the court examines the employer's legitimate, non-discriminatory reason. *Brady v. Cumberland Cty.*, 2015 ME 143, ¶ 30, 126 A.3d 1145.

### B. *Prima Facie Evidence of Unlawful Discrimination*

Defendants first argue that Plaintiff failed to satisfy its initial burden of producing *prima facie* evidence of a causal connection. At the summary judgment stage, the *prima facie* case requires only "a small showing that is not onerous and is easily made." *Brady*, 2015 ME 143, ¶ 14, 126 A.3d 1145. Plaintiff has succeeded in satisfying its initial burden.

It is undisputed that Mr. Drice, the owner of Tito Masonry, is an African-American and Hispanic-American and is a member of a protected class. (Opp. S.M.F ¶ 2.) The fact-

---

step of *McDonnell Douglas* duplicative. *Id.* ¶ 37 ("[w]ith or without the *McDonnell Douglas* burden-shifting process . . . evidence of causation requires the court to recognize any evidence that the employer had a lawful reason for the adverse action taken against the employee, and any evidence that the proffered reason is a mere pretext."). Because the Law Court has yet to do so in the context of a Section 1981 claim, this Court will continue to apply the *McDonnell Douglas* framework.

finder could infer, based on PHA's history of employing Tito Masonry, it is qualified for the job. (Opp. S.M.F. ¶ 6; *see* Drice Dep. Ex. 28.) Furthermore, Defendants' failure to extend the contract and Plaintiff's ultimate termination is evidence of an adverse employment action.

As for the last prong of Plaintiff's *prima facie* case, Plaintiff offered sufficient evidence of a causal connection between its membership in a protected class and the adverse employment action. Mr. Biggs allegedly told Mr. Drice he should "give up construction and just play the lottery instead," and that he would be "better off playing sports like football," and stated, "you must spend all of your time at the gym instead of working." (Opp. S.M.F. ¶ 13.) Plaintiff claims Mr. Biggs was unfamiliar with construction industry standards, and could not deal with working alongside a minority owned business. (Opp. S.M.F. ¶ 24.) Also, illustrative of a causal connection, is that after multiple requests for keys to access 66 Purchase Street, Mr. Biggs allegedly stated, "I'm uncomfortable giving you the key. How do I know you or your guys will not try to sleep in the unit?" (Opp. S.M.F. ¶¶ 17, 21; Drice Dep. Tr. 198:22-199:6.) As stated earlier, Tito Masonry regularly employs people of color.

Because the record contains disputed evidence of Mr. Biggs's discriminatory remarks and behavior, a reasonable jury could find a sufficient nexus between the adverse employment action and Plaintiff's membership in a protected class.

### C. *Legitimate Non-Discriminatory Justification and Pretext*

Defendants next argue that even if Plaintiff satisfied its initial burden, Defendants provided a legitimate non-discriminatory reason for terminating the contract. It is undisputed that Plaintiff failed to complete the project by the April 17, 2018 deadline. Mr. Adelson's letter affirming Tito Masonry's termination summarizes Defendants' justification:

PHA was justified in terminating your contract on this project due to your inability to complete the work in a timely matter, as outlined in the contract, as well as to multiple defects in workmanship. PHA gave you an adequate period to cure the problems and complete the project. These attempts also proved to be unsatisfactory . . . .

(Drice Dep. Ex. 28.) Although Defendants' proffered justification is compelling, "courts should exercise particular caution before granting summary judgment for employers on such issues as pretext, motive, and intent." *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 54 (1st Cir. 2000). To that end, Plaintiff's Statement of Material Facts provides sufficient evidence of racially motivated comments, improper inspections, and a failure to grant an extension despite adverse weather conditions, thereby preluding summary judgment. (Pl.'s Opp'n to Def.s' Mot. Summ. J. 4, 8.)

Plaintiff can demonstrate pretext by showing discriminatory comments were made by a decisionmaker or by someone in a position to influence the decisionmaker. *Santiago-Ramos*, 217 F.3d at 55. Plaintiff's Statement of Material Facts reveal multiple discriminatory comments. Moreover, it is uncontested that Mr. Biggs was involved in the final decision to terminate the contract.[8] In light of Mr. Biggs's position and involvement overseeing the East Bayside Project, it is possible that his purported discriminatory motives influenced the ultimate decision to terminate the contract. Ms. Sessions and Mr. Adelson may have deferred to Mr. Biggs's recommendation and assessment of Tito Masonry's performance.[9]

---

[8] The fact that Plaintiff had never been terminated from a contract with PHA prior to Mr. Biggs becoming the Director of Maintenance is further evidence a jury could consider to evaluate the existence of pretext. (Opp. S.M.F. ¶¶ 6, 5, 51.)

[9] Although Defendants support their decision by citing to Mr. Thomas's March 2018 inspection that noted defects and deficiencies, the April 17, 2018 inspection appears to have been done by Mr. Biggs, without the project's architect. (Opp. S.M.F. ¶ 39.)

Mr. Biggs's comments and allegedly discriminatory behavior has the potential to change the outcome of Plaintiff's Section 1981 claim. Whether and in what context Mr. Biggs made these comments is a question for the jury. As such, having reviewed the evidence in the light most favorable to Tito Masonry, the Court concludes that a reasonable jury could infer that Defendants' proffered justifications were a mere pretext, disguising Mr. Biggs's racial motivations.

## IV. Conclusion

For the foregoing reasons, Defendants' Motion for Partial Summary Judgement with respect to Counts III and IV is DENIED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _12/16/19_

Mary Gay Kennedy, Justice
Maine Superior Court

Entered on the Docket: 12|17|19