# United States Court of Appeals
## For the First Circuit

No. 14-2182

CARDIGAN MOUNTAIN SCHOOL,

Plaintiff, Appellant,

v.

NEW HAMPSHIRE INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Landya B. McCafferty, U.S. District Judge]

Before

Howard, Selya, and Barron,
Circuit Judges.

Scott H. Harris, with whom Nicholas C. Casolaro, Andrew R.
Hamilton, and McLane, Graf, Raulerson & Middleton, P.A. were on
brief, for appellant.
Mark D. Sheridan, with whom Jason F. King, Sean P. Neafsey,
and Squire Patton Boggs (US) LLP were on brief, for appellee.

May 27, 2015

**BARRON**, **Circuit Judge**.  This appeal arises out of an action for a declaratory judgment.  The plaintiff, now the appellant, is a private middle school in Canaan, New Hampshire.  The school seeks to prove that, nearly fifty years ago, the insurance company that is the defendant, and now the appellee, issued the school an insurance policy that covers a claim that the school recently received concerning events allegedly occurring during the 1967-1968 academic year.

The twist is that while the school can document that it had a policy with the insurance company at some point, it cannot find a copy of the policy for the year in question.  And the insurance company has told the school that it cannot confirm the existence of the policy.  Thus, the company contends that it is not obliged to cover the claim and, more significantly for present purposes, that the school's complaint should be dismissed because it fails to make a plausible case that such a policy ever existed.

The District Court sided with the insurance company and dismissed the suit.  But although the question is close, we reverse and remand for further proceedings.

## I.

In 2013, the Cardigan Mountain School received a demand letter asserting a claim (about which we have been given no details) based on events that allegedly occurred during the 1967-

- 2 -

1968 school year. In response, the school asked the New Hampshire Insurance Company to defend against the claim as the carrier of the school's comprehensive general liability insurance policy at that time.

The New Hampshire Insurance Company rejected the request. The company explained that it had not been able to locate any policy covering the school for the relevant time period, and thus that it was not the school's carrier at that time and therefore had no duty to defend against this claim now.

Not having found a copy of the policy in its own records, the school filed this suit in New Hampshire state court under the New Hampshire declaratory judgment statute. See N.H. Rev. Stat. Ann. § 491:22. The school sought a judgment "adjudicating and decreeing the existence of, and Cardigan's rights under, any policy issued by" New Hampshire Insurance Company.

New Hampshire Insurance Company -- which, notwithstanding its name, is a Pennsylvania corporation with its headquarters in New York -- removed the suit to federal court on diversity-of-citizenship grounds. See 28 U.S.C. § 1332(a). New Hampshire Insurance Company then moved to dismiss the suit for failure to state a claim. See Fed. R. Civ. P. 12(b)(6).

The District Court granted New Hampshire Insurance Company's motion and dismissed the suit. The District Court

concluded that the school's complaint did not plausibly show the existence of the policy.[1]  The school appealed.[2]

## II.

Under the Federal Rules of Civil Procedure, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). To meet that standard, a plaintiff "need not demonstrate that [it] is likely to prevail" on its claim.  García-Catalán v. United States, 734 F.3d 100, 102 (1st Cir. 2013).  Rather, the complaint need include only enough factual detail to make the asserted claim "plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  We review the District Court's dismissal of complaint

---

[1]  The District Court also held that the school's suit was ripe for adjudication, because the school had received a demand letter threatening legal action and the uncertainty over the availability of insurance coverage had "significant implications" for the parties' responses to that letter.  Neither party challenges that ripeness holding on appeal.

[2]  The school does not challenge the District Court's separate holding that New Hampshire law places the burden on the school to prove the existence of the disputed insurance policy, rather than placing the burden on New Hampshire Insurance Company to disprove the existence of the policy, and we therefore do not address that question in this appeal.  See Kelley v. LaForce, 288 F.3d 1, 11 (1st Cir. 2002) (issues not raised in the appellant's brief are waived).  We thus resolve this appeal on the understanding that the school bears the burden of persuasion on this issue.

for failure to state a claim de novo. García-Catalán, 734 F.3d at 102.

To evaluate the sufficiency of a complaint under Rule 8, we first must "distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Id. at 103 (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). We then must "determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable . . . .'" Id. (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)).

To perform this two-step analysis, though, we need to be clear about the legal issue that is in dispute. Here, the school seeks to prove that the company must cover the claim made in the 2013 demand letter that the school received. But on appeal, the issue is narrower. The sole legal question in dispute concerns the existence of the policy, not whether that policy, if it exists, covers the claim. And that is because, as in the District Court, the New Hampshire Insurance Company seeks the complaint's dismissal solely on the ground that the complaint does not make a plausible case that the policy was ever in place. See Goldman v. First Nat'l Bank of Bos., 985 F.2d 1113, 1116-17 n.3 (1st Cir. 1993) ("[T]heories not raised squarely in the district court cannot

be surfaced for the first time on appeal." (quoting McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991))).

We thus look at the complaint to determine what facts it sets forth concerning the existence of the policy. We then address whether, accepting the truth of those facts, the complaint makes out a plausible case that the policy does in fact exist.

**A.**

The allegations in the school's complaint do not include a direct allegation that the insurance policy existed. In fact, the complaint alleges that New Hampshire Insurance Company's representative "has noted that she has searched for the policy and been unable to find it, but has assured the [school] that her search continues." In place of a direct allegation, the complaint relies on circumstantial evidence. That evidence is as follows.

The complaint alleges that an accounting firm prepared an audit report for the school dated September 1971. That report is attached as an exhibit to the complaint. The report states that from September 1970 to September 1971 the school had a "Special Multi-Peril" insurance policy from the New Hampshire Insurance Company. And, according to the report, that policy included $1,000,000 in "General Liability" coverage.

The complaint further states that Phillip Wheeler, "one of the two principals in the [accounting] firm that prepared" that

audit report, "believes that had the school changed carriers" between the 1969-1970 school year and the 1970-1971 school year, "then the auditors would have noted the change." No such change is noted in the audit report.

To show that the policy was in place during the critical 1967-1968 school year, the complaint alleges that "Cornelius Bakker, Cardigan's business manager between 1967 and 1970, is certain the school had insurance during his tenure." The complaint further alleges that Bakker "worked with A.B. Gile, Inc., a local insurance brokerage, to secure Cardigan's insurance coverage." And the complaint alleges that Bakker "does not believe Cardigan changed carriers while he was business manager between 1967 and 1970."

The complaint offers one additional, bolstering allegation. It alleges "[u]pon information and belief" that the insurance brokerage the school used "had a close association with" New Hampshire Insurance Company and "advised most of its commercial clients like Cardigan to place their commercial lines of insurance with" New Hampshire Insurance Company.

New Hampshire Insurance Company argues, and the District Court held, that, except for the allegation concerning the audit report, the complaint sets forth "nothing more than speculation and conjecture." New Hampshire Insurance Company thus argues that

we are not "obligated to accept" those other allegations as true. New Hampshire Insurance Company relies for that argument on the Supreme Court's decisions in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

In each decision, the Supreme Court held that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678; see Twombly, 550 U.S. at 555. Iqbal illustrates the sort of "conclusory statements" that are "not entitled to the assumption of truth." 556 U.S. at 678-79.

Iqbal involved a suit by an individual -- Iqbal -- who was arrested and detained following the September 11, 2001, terrorist attacks. Id. at 666. After Iqbal was released, he brought suit against a variety of federal officials, asserting alleged violations of his constitutional rights. Id. The defendants included John Ashcroft, who had been the United States Attorney General at the time, and Robert Mueller, then the Director of the Federal Bureau of Investigation. Id.

The Supreme Court explained that the complaint's "bald allegations" that Ashcroft and Mueller were personally involved in unconstitutional conduct were "conclusory" and thus should have been disregarded by the district court. Id. at 681. In particular, the Supreme Court held that statements that Ashcroft

- 8 -

and Mueller "'knew of, condoned, and willfully and maliciously agreed to subject [the plaintiff]' to harsh conditions of confinement" based on his "'religion, race, and/or national origin'" were not factual allegations that must be taken as true. Id. at 680. And the Court ruled the same with respect to Iqbal's allegations that "Ashcroft was the 'principal architect'" of the policy and that "Mueller was 'instrumental' in adopting and executing it." Id. at 680-81.

These sorts of allegations, the Court explained, were "nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim." Id. at 681 (quoting Twombly, 550 U.S. at 555). In contrast, Iqbal did credit as factual those allegations in the complaint that made reference to specific events. See id. (crediting allegations including "that 'the [FBI], under the direction of Defendant MUELLER, arrested and detained thousands of Arab Muslim men'").

The Supreme Court's decision in Twombly is similar. Twombly was an antitrust suit. See 550 U.S. at 548. The plaintiffs contended that the defendants had conspired "in restraint of trade" in the local telephone market. Id. (quoting 15 U.S.C. § 1). The plaintiffs lacked any direct evidence of the existence of the conspiratorial agreement on which their claim depended. See id. at 564. Rather, the plaintiffs based their claim largely "on

- 9 -

descriptions of parallel conduct" by the defendants -- similar actions taken by putatively independent firms that, according to the plaintiffs, showed that those firms were really acting in concert. Id. at 553-54, 564.

The Supreme Court credited those factual allegations of parallel conduct, although it ultimately found them inadequate to state a claim under § 1. See id. at 564-66. But mixed in among the plaintiffs' allegations about parallel conduct were "a few stray statements speak[ing] directly of agreement." Id at 564 & n.9. Those "stray statements," the Supreme Court held, were "on fair reading . . . merely legal conclusions resting on the prior allegations." Id. at 564. In particular, the allegation that the defendants "have entered into a contract, combination or conspiracy . . . and have agreed not to compete with one another" was, the Supreme Court held, no more than a legal conclusion based on the allegations of parallel conduct. Id. at 564-65. And thus, the Supreme Court held that this direct allegation of agreement did not need to be taken as true. See id.

New Hampshire Insurance Company contends that, under Iqbal and Twombly, we are obliged to disregard the school's allegations outlined above (save for the one concerning the audit report). But New Hampshire Insurance Company's argument is mistaken.

The allegations in the school's complaint described above are specific and factual. The complaint refers to individuals with relevant knowledge who are recalling facts plausibly known to them. Those allegations are thus like the allegations of actual events in Iqbal and of parallel conduct in Twombly that the Supreme Court took as true; they are specific and appear to be based on the knowledge of particular individuals. They are not bare recitations of the legal conclusion the suit seeks to prove. We thus conclude that the school's allegations set forth above are entitled to the presumption of truth at the motion to dismiss stage.

At the same time, precisely because these factual allegations involve a series of particular recollections and beliefs about the school's insurance practices and the role of the auditor, the complaint provides at most circumstantial evidence that the school had an insurance policy with this carrier at the time in question. And so we must proceed to the second step of the analysis, and consider whether "the factual allegations are sufficient to support 'the reasonable inference that'" the insurance policy at issue was in place. García-Catalán, 734 F.3d at 103 (quoting Haley, 657 F.3d at 46).

- 11 -

In undertaking our inquiry, we must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." Id. at 102 (quoting Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012)). In doing so, we recognize that "circumstantial evidence often suffices" to render an asserted claim plausible in the pleading context. Id. at 103 (quoting Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 56 (1st Cir. 2013)). But at bottom, this inquiry requires that we "draw on [our] experience and common sense," Iqbal, 556 U.S. at 679, as the parties have cited no precedent to guide us on the application of the Rule 8 standard to a lost-insurance-policy suit, and we have found very little on our own.[3] Instead, nearly every lost-policy case we know of concerns what showing must be made to survive summary judgment. See, e.g., Bianchi v. Florists Mut.

---

[3] See Radenbaugh v. State Farm Lloyds, No. 4:13-CV-339-A, 2013 WL 4442024, *2-*4 (N.D. Tex. 2013) (granting motion to dismiss because, among other things, the complaint made no allegations that the defendant insurance company had ever issued an insurance policy to him); N. River Ins. Co. v. Bishop of Pueblo, No. 06-cv-01971, 2008 WL 280842, *2 (D. Colo. 2008) (denying motion to dismiss a counterclaim because the "ambiguities" and "issues of fact" relating to the existence of a policy must be construed in non-movant's favor); Lumbermens Mut. Cas. Co. v. Foster Wheeler Corp., No. 88 C 4302, 1993 WL 394769, at *3 (N.D. Ill. Oct. 4, 1993) (holding, with little explanation, that unspecified allegations in a complaint adequately alleged the existence of a lost insurance policy).

Ins. Co., 660 F. Supp. 2d 434 (E.D.N.Y. 2009); S. Union Co. v. Liberty Mut. Ins. Co., 581 F. Supp. 2d 120 (D. Mass. 2008); UTI Corp. v. Fireman's Fund Ins. Co., 896 F. Supp. 362 (D.N.J. 1995); Peterborough v. Hartford Fire Ins. Co., 824 F. Supp. 1102 (D.N.H. 1993).

In our view, although the question is close, the school's allegations, and the "reasonable inferences" we must draw from them, García-Catalán, 734 F.3d at 102 (quoting Grajales, 682 F.3d at 44)), do make a plausible showing that New Hampshire Insurance Company issued an insurance policy to the school for the 1967-1968 school year. The school's allegation of the existence of a New Hampshire Insurance Company policy for the 1970-1971 school year is directly supported by the school's audit report from that year. And the school's factual allegations tending to show no change in coverage in the preceding three years are enough to plausibly support the existence of coverage in the 1967-1968 school year.

The factual allegations are "circumstantial," to be sure, but there is no requirement for direct evidence. Id. at 103 (quoting Rodríguez-Reyes, 711 F.3d at 56). Neither is there a "probability requirement" at the pleading stage. Twombly, 550 U.S. at 556. Rather, the factual allegations need only be enough to nudge the claim "across the line from conceivable to plausible,"

- 13 -

thus "rais[ing] a reasonable expectation that discovery will reveal evidence of" the lost policy.  Id. at 556, 570.

The school has alleged specific facts concerning an audit report that tend to show that it had an insurance policy from New Hampshire Insurance Company as of 1971.  And the school has then linked that allegation to the recollections of specific individuals who were involved in the relevant events and are of the view both that the school had a general liability policy in the preceding years, including the crucial 1967-1968 school year, and that there had been no change in carrier during that period of time.

New Hampshire Insurance Company responds that the school's complaint, in describing the recollections of these persons, uses "carefully crafted words" in an effort to disguise "the vagueness" of the key factual allegations.  New Hampshire Insurance Company focuses in particular on the allegation that Bakker "does not believe Cardigan changed carriers" between 1967 and 1970, which, New Hampshire Insurance Company says, is not the same as saying that "Cardigan did not change carriers."

But in ordinary usage, the expression "I do not believe [some event] occurred" may be synonymous with the expression "I believe [some event] did not occur."  We are required at this stage of the proceedings to "draw all reasonable inferences in" the

school's favor.  Morales-Tañon v. P.R. Elec. Power Auth., 524 F.3d 15, 17 (1st Cir. 2008).  And one reasonable inference from the school's allegation is thus that Bakker's best recollection is that the school did not change insurance carriers during his tenure.  Moreover, the school pleads that Bakker was the person who "worked with A.B. Gile, Inc., a local insurance brokerage, to secure Cardigan's insurance coverage."  Given that assertion, it is a reasonable (albeit not necessary) inference that, had there been a change in coverage, Bakker would have known about it, due to his asserted role in securing coverage for the school.  Thus, Bakker's lack of a belief that there was a change in coverage (even phrased as it was) is itself a relevant, factual assertion tending to suggest that no such change in coverage occurred.[4]

---

[4]  New Hampshire Insurance Company also argues that Bakker may have lacked knowledge regarding the crucial 1967-1968 policy, because that policy could have been purchased before Bakker became the school's business manager at an unspecified time in 1967.  But the school alleges that Bakker worked for the school during that 1967-1968 school year, and that Bakker believes the school did not "change[] carriers while [Bakker] was business manager."  Any change in insurance carrier between the 1967-1968 school year and the 1969-1970 school year would thus have occurred "while [Bakker] was business manager."  And so it is reasonable to think that Bakker -- the one who was responsible for purchasing insurance -- would have personal knowledge of such a change, even if -- as New Hampshire Insurance Company suggests -- Bakker may not have been the one who purchased the 1967-1968 policy.  Moreover, as we have discussed, the school's allegations also address the possibility of a change in insurance after Bakker's tenure as business manager ended at an unspecified time in 1970.  The school alleges that any change between the 1969-1970 and 1970-1971 school years would have

This case is not one in which a plaintiff has selected an insurance company at random and filed a declaratory judgment action against it in the hopes that the plaintiff might get lucky and find a policy. The school's complaint instead provides a plausible basis, beyond a mere possibility, for believing that New Hampshire Insurance Company issued the policy in question. Whether the school can elicit the evidence that will be required to make the more demanding showing the school will need to make as the suit moves forward is, of course, a different question that we need not address in this appeal. See Twombly, 550 U.S. at 556 (noting that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely'"); see also Metts v. Murphy, 363 F.3d 8, 10, 12 (1st Cir. 2014) (en banc) (vacating the dismissal of the plaintiffs' claim as "premature" and remanding "to allow a fuller development of the evidence, and further legal analysis based on that evidence," before resolving the claim on the merits).

---

been noted on the 1970-1971 audit report, which showed the existence of a New Hampshire Insurance Company policy and noted no change in insurer from the prior year.

We thus reverse the District Court's dismissal of this action for failure to state a claim, and we remand the case for further proceedings consistent with this opinion.