# United States Court of Appeals
## For the First Circuit

No. 18-1818

STARR SURPLUS LINES INSURANCE COMPANY, as Subrogee to
ADVANCEPIERRE FOODS, INC.,

Plaintiff, Appellant,

v.

MOUNTAIRE FARMS INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Jon D. Levy, Chief U.S. District Judge]

Before

Lynch, Stahl, and Barron,
Circuit Judges.

Eileen K. Bower, with whom James J. Sanders, Emily A. Golding,
Clyde & Co US LLP, Paul C. Catsos, Elizabeth K. Peck, and Thompson
Bowie & Hatch LLC were on brief, for plaintiff-appellant.
Kevin King, with whom John J. Deboy, Neil K. Roman, Covington
& Burling LLP, David B. McConnell, Joseph G. Talbot, and Perkins
Thompson PA were on brief, for defendant-appellee.

April 3, 2019

**BARRON**, **Circuit Judge**.  This appeal concerns a suit in the District of Maine by the insurer of a chicken products manufacturer to recoup the losses that it paid to the manufacturer for the losses that the manufacturer incurred when its products were recalled following a salmonella outbreak.  Subrogated to the rights of the manufacturer, the insurer sought damages from the manufacturer's chicken supplier for claims under Maine law for breach of warranty and strict product liability.  In support of those claims, the insurer's complaint alleged that the manufacturer received two truckloads of raw chicken from the supplier that was contaminated with Salmonella Enteriditis and was therefore "defective" under Maine law.  The supplier filed a motion to dismiss, which the District Court granted as to all claims. The District Court did so after ruling that the complaint's allegations did not suffice to plausibly allege that the raw chicken that the supplier sent to the manufacturer was "defective." The District Court also concluded that the insurer's strict liability claim was independently barred by the economic loss doctrine.  We affirm.

## I.

The insurer is Starr Surplus Lines ("Starr").  Starr is subrogated to the rights that its insured, AdvancePierre, had under a contract with Mountaire Farms ("Mountaire").  Starr's complaint alleges the following facts, which we accept as true in reviewing

- 2 -

the grant of a motion to dismiss.  See Fantini v. Salem State Coll., 557 F.3d 22, 26 (1st Cir. 2009).

Mountaire is a regional fresh chicken producer located in North Carolina.  In December 2014, Mountaire entered into a contract (the "Contract") with AdvancePierre, which is a national manufacturer of "value-added proteins and sandwich products to foodservice, retail, schools, and convenience channels." AdvancePierre's products are sold under various brand names, including Barber Foods.

Mountaire agreed under the Contract to deliver raw chicken parts to AdvancePierre's Barber Foods facility in Portland, Maine (the "Portland Facility").  In February 2015, Mountaire shipped 120,000 pounds of fresh boneless chicken breasts to the Portland Facility in connection with three separate purchase orders that AdvancePierre made under the Contract.  AdvancePierre logged each purchase order, which was assigned a unique lot number, into its computer system, along with the supplier information and the time and date that the products that had been ordered were received.

The fresh chicken that AdvancePierre purchased from Mountaire was "contaminated with Salmonella Enteritidis at the time of delivery to AdvancePierre."  AdvancePierre used this chicken from Mountaire to produce value-added raw chicken products, such as frozen raw stuffed chicken breasts (e.g.,

- 3 -

"Chicken Kiev, Chicken Cordon Bleu, [Chicken Stuffed with] Broccoli Cheese"), at the Portland Facility.

Between February and June of 2015, clusters of individuals (initially a total of six) in Minnesota and Wisconsin became infected with Salmonella Enteritidis. These cases were reported to the federal Food Safety Inspection Service ("FSIS") on June 24, 2015.

Through genetic testing, the FSIS identified "PFG pattern combinations" of the salmonella pathogen in all six of these patients that were "unique and new to the [Center for Disease Control ("CDC")] Pulse Net Database." The FSIS then linked the unique PFG pattern combinations to chicken products made by AdvancePierre at the Portland Facility. Later, the FSIS learned of two additional individuals who had contracted a Salmonella Enteritidis infection after being exposed to AdvancePierre products produced at the Portland Facility on the same production dates as the products linked to the other infected individuals.

Based on this testing, the FSIS issued a public health alert on July 1, 2015. On July 2, 2015, AdvancePierre initiated a recall with respect to 58,320 pounds of chicken products made on specific dates in 2015 at the Portland Facility. "[A]t the insistence of [the] FSIS," AdvancePierre soon thereafter expanded the recall to encompass a total of 1,707,494 pounds of raw chicken products produced by AdvancePierre at the Portland Facility on

specific production dates between February 2015 and May 2015. Using its computer system, AdvancePierre determined that the chicken products associated with the Salmonella Enteritidis outbreak and the subsequent recall were made with chicken from the two truckloads of raw chicken parts that Mountaire had supplied in February 2015.

As a result of the recall, AdvancePierre incurred losses in excess of $10 million, "including but not limited to return and destruction of the recalled chicken products, lost sales opportunities, loss of business, and loss of customers." Starr paid AdvancePierre $10 million for the losses that it had sustained in connection with the recall. Starr subrogated to the rights of AdvancePierre under the Contract with Mountaire.

Starr then filed suit against Mountaire in Cumberland County Superior Court in Maine. Starr brought claims under Maine law for breach of the implied warranty of merchantability, see Me. Rev. Stat. tit. 11, § 2-314, breach of the implied warranty of fitness for a particular purpose, see id. § 2-315, and strict product liability, see Me. Rev. Stat. tit. 14, § 221, based on the allegation that the chicken that Mountaire had supplied to AdvancePierre was contaminated with Salmonella Enteritidis. Mountaire removed the action to the United States District Court for the District of Maine on the basis of diversity jurisdiction. See 28 U.S.C. § 1332(a).

Mountaire filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), which the District Court granted as to all claims. See Starr Surplus Lines Ins. Co. v. Mountaire Farms Inc., No. 2:18-CV-00067-JDL, 2018 WL 3676839, at *3 (D. Me. Aug. 2, 2018). The District Court concluded that, under Maine law, salmonella is an inherent, unavoidable, and recognized component of raw chicken that is eliminated by proper cooking methods and that the complaint failed plausibly to allege that the chicken from Mountaire was contaminated with any pathogen other than such salmonella. See id. The District Court thus concluded that Starr's complaint did not sufficiently allege a "defect" in the chicken from Mountaire, as it was required to do in order to state a claim for breach of warranty and strict product liability. See id. The District Court also determined that Starr's strict liability claim was independently barred by the economic loss doctrine, which precludes recovery in tort for economic loss unaccompanied by personal injury or property damage. See id. at *3-4. Starr then filed this timely appeal.

## II.

We review the grant of a motion to dismiss de novo. See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). We "accept[] all well-pleaded facts as . . . true and draw[] all reasonable inferences in favor of [the non-moving party]." Fantini, 557 F.3d at 26. "We may augment these facts

- 6 -

and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

In undertaking our review, we first set aside legal conclusions and those factual allegations "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." In re Curran, 855 F.3d 19, 25 (1st Cir. 2017) (internal quotation marks omitted). We then consider whether the remaining well-pleaded allegations are "sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged." García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (citations and internal quotation marks omitted).

## III.

We begin with Starr's breach of warranty claims. Under Maine law, "in order to maintain a claim for breach of the implied warranties of merchantability and fitness for particular purpose," the "plaintiff must show some defect in the product at the time it was sold." Walker v. Gen. Elec. Co., 968 F.2d 116, 119 (1st Cir. 1992) (citing Lorfano v. Dura Stone Steps, Inc., 569 A.2d 195, 197 (Me. 1990); Faulkingham v. Seacoast Subaru, Inc., 577 A.2d 772, 774 (Me. 1990); Sylvain v. Masonite Corp., 471 A.2d 1039, 1040-41 (Me. 1984)) (footnotes omitted). Starr's challenge to the

dismissal of its breach of warranty claims turns in part on whether the complaint plausibly alleges that the raw chicken that Mountaire supplied to AdvancePierre -- as opposed to the chicken products that AdvancePierre made using that raw chicken -- contained Salmonella Enteritidis.  But, the success of Starr's challenge does not turn only on the plausibility of that allegation.

Starr accepts that, under Maine law, raw chicken that contains salmonella that can be eliminated by proper cooking cannot be considered "defective."  See, e.g., Kobeckis v. Budzko, 225 A.2d 418, 423-24 (Me. 1967) (holding that raw pork containing trichinar was not defective because "[t]he usual use of meat as a food is when cooked, not when raw" and the "warranty implied . . . on the sale of uncooked pork . . . is that the pork . . . is reasonably fit for human consumption only when properly cooked"); see also Craten v. Foster Poultry Farms Inc., 305 F. Supp. 3d 1051, 1064 (D. Ariz. 2018) ("It is undisputed that Salmonella occurs naturally in chicken and that the bacteria are killed through proper cooking[,] . . . which is how raw chicken products are intended to be used."); Leno v. Ehli, 339 N.W.2d 92, 99 (N.D. 1983) (noting that "it is common knowledge that there is a danger of illness from eating poultry which has not been properly prepared"); González Cabán v. JR Seafood, 132 F. Supp. 3d 274, 287 (D.P.R. 2015) (noting that Salmonella is a "natural" material in chicken).  Thus, Starr's challenge to the dismissal of its claims

- 8 -

may succeed only if the complaint plausibly alleges that the raw chicken that Mountaire sold to AdvancePierre was contaminated with a type of salmonella that would persist despite proper cooking. And there, as we will explain, the complaint comes up short.[1]

In attempting to make the contrary case, Starr does not dispute that "[t]he allegations in the . . . complaint do not" once mention cooking, let alone "include a direct allegation that" the chicken from Mountaire was contaminated with a type -- insofar as there is such a type -- of salmonella resistant to proper cooking. Cardigan Mountain Sch. v. New Hampshire Ins. Co., 787 F.3d 82, 85 (1st Cir. 2015). Instead, Starr argues that the complaint lays out a plausible circumstantial case for so concluding. But, while "'circumstantial evidence often suffices' to render an asserted claim plausible in the pleading context," id. at 87 (quoting García-Catalán, 734 F.3d at 103), that is not the case here.

In arguing otherwise, Starr first points to the complaint's allegation that, "[t]hrough genetic testing, the FSIS identified PFG pattern combinations . . . in all of six of the

---

[1] The parties do dispute whether Maine law applies the "foreign-natural" test, see Kobeckis, 225 A.2d at 423, or the "reasonable expectation" test, see Estate of Pinkham v. Cargill, Inc., 55 A.3d 1, 5 (Me. 2012), to defective food product claims. We need not decide which test applies here, because we conclude that chicken containing salmonella that can be killed by proper cooking is not "defective" under either test. Nor does the plaintiff contend otherwise.

patients initially infected with Salmonella Enteritidis in Wisconsin and Minnesota." In that same vein, Starr also notes, the complaint alleges that "[t]hese genetic pattern combinations were unique and new to the [Center for Disease Control ("CDC")] Pulse Net Database, and enabled the FSIS to link the illnesses directly to products produced at AdvancePierre."

But, "documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice," Haley, 657 F.3d at 46, confirm that Salmonella Enteritidis is a common form of the salmonella pathogen that can be eliminated by proper cooking. See, e.g., Salmonella Enteritidis Infection, CDC Prevention Guidelines (March 1, 1992), https://wonder.cdc.gov/wonder/prevguid/p0000003/p0000003.asp (explaining that "if [the product] is thoroughly cooked, the Salmonella [Enteritidis] organisms will be destroyed and will not make the person sick"). Nor does the complaint at any point directly allege otherwise.

Starr places great emphasis on the fact that the complaint alleges that the "genetic pattern combinations" of the salmonella pathogen found in the patients linked to the outbreak "were unique and new to the CDC Pulse Net Database." The complaint further alleges that these "unique and new" "genetic pattern combinations" "enabled the FSIS to link the illnesses directly to products produced at AdvancePierre." But, the key question with

respect to the viability of Starr's breach of warranty claims is not whether the type of salmonella alleged to have contaminated the chicken supplied by Mountaire was found in the persons who suffered the illnesses that led to the recall. The key question is whether that type of salmonella is resistant to proper cooking. The complaint's allegations concerning the "unique" genetic pattern combinations simply do not bear on that question.

Starr next points to the complaint's allegation that a total of eight individuals in Minnesota and Wisconsin became infected with Salmonella Enteritidis after being exposed to products produced by AdvancePierre at the Portland Facility that contained the chicken from Mountaire. The complaint does not allege, however, that any of the eight patients contracted the Salmonella Enteritidis infection after eating properly cooked AdvancePierre chicken products or even after eating the products at all. In fact, Starr's counsel represented at oral argument only that the infected patients were "exposed" to AdvancePierre products containing the chicken at issue and conceded that the patients could have contracted the infections from merely touching the raw AdvancePierre chicken products. Nor does the complaint "refer[] to individuals with relevant knowledge who are recalling facts plausibly known to them" to help tip the allegations past the point of plausibility. Cardigan Mountain, 787 F.3d at 87.

These deficiencies are significant because, as we have already explained, the complaint makes no allegation -- directly -- that the type of salmonella found in the chicken linked to the infected persons could not have been eliminated by proper cooking. In the absence of any allegation of that sort, we do not see how the mere fact that those persons became ill from that type of salmonella after being "exposed" to the AdvancePierre chicken products provides a plausible basis for inferring that the type of salmonella that those products were contaminated with was of such a kind.

Finally, Starr points to the complaint's allegations that the FSIS determined that the outbreak was severe enough to warrant a recall of the AdvancePierre products containing the chicken from Mountaire and "therefore [that] these products [from Mountaire] were adulterated within the meaning of 9 C.F.R. § 381.1(b)(iii)." Starr then proceeds to argue that "if the recalled chicken products simply contained [the type of] Salmonella that one expects to find in any chicken product, there would be no basis for the FSIS to find that the products were 'adulterated' and should be recalled because they were unfit for human consumption." In this way, Starr relies upon the allegations concerning the recall to make the case that the complaint states a valid claim, even if it is otherwise deficient in alleging that

the chicken was contaminated with a form of _salmonella_ that could not be eliminated by proper cooking.

Mountaire counters that we should set aside the complaint's allegation that the chicken from Mountaire "w[as] adulterated within the meaning of 9 C.F.R. § 381.1(b)(iii)" as conclusory.  See _Ashcroft_ v. _Iqbal_, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  But, even if we were to disagree with Mountaire on that point, it would not save Starr's case.

Federal law governing recalls provides no basis for concluding that, if chicken is "adulterated within the meaning of 9 C.F.R. § 381.1(b)(iii)," then the chicken is contaminated with a type of _salmonella_ that would persist despite proper cooking. The Poultry Products Inspection Act ("PPIA") prohibits the sale of poultry that is "adulterated," _see_ 21 U.S.C. § 458(a)(2), and poultry is deemed "adulterated" under that statute "if it consists . . . of any filthy, putrid, or decomposed substance or is for any other reason unsound, unhealthful, unwholesome, or otherwise unfit for human food," _id._ § 453(g)(3); _see also_ _id._ § 601(m)(3); 9 C.F.R. § 381.1(b)(iii).  The only respect in which the complaint alleges that the chicken at issue was "adulterated" under the PPIA is that it "contained pathogens including _Salmonella Enteritidis_, which caused human illness. . . ."  But, as we have

- 13 -

explained, neither the fact that the chicken from Mountaire was contaminated with Salmonella Enteritidis nor the fact that the products into which it was incorporated were linked to an illness outbreak permits the inference that the chicken from Mountaire was "defective" under Maine law.

Nor does the complaint allege that the FSIS was required under the relevant federal laws to make -- or that the FSIS in this instance made -- any other determinations about the chicken products at issue. In fact, the published FSIS guidance materials cited by Mountaire confirm that the FSIS may in some instances deem poultry products to be "adulterated" under the PPIA merely because the "products are associated with an illness outbreak." HAACP Plan Reassessment for Not-Ready-To-Eat Comminuted Poultry Products and Related Agency Verification Procedures Notice, 77 Fed. Reg. 72,686, 72,689 (Dec. 6, 2012); see also Craten, 305 F. Supp. 3d at 1059-60. Thus, the mere fact of the FSIS-orchestrated recall does not give rise to the plausible inference that the type of salmonella found in the AdvancePierre chicken products could not be eliminated by proper cooking. The fact of the recall might simply reflect that the FSIS linked particular chicken products to an outbreak of salmonella.

We recognize that "this is a commercial case between two businesses," and we do not mean to suggest that, as a categorical matter, "a seller of raw chicken products has no recourse against

- 14 -

a raw chicken supplier when the federal government determines that the supplied chicken is adulterated and warrants a massive Recall." But, after considering "the cumulative effect of the factual allegations contained in the complaint," A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 82 (1st Cir. 2013) (citation and internal quotation marks omitted), we conclude that Starr failed to allege "something more than facts showing that a claim is conceivable," In re Curran, 855 F.3d at 27. We therefore affirm the District Court's dismissal of Starr's breach of warranty claims.

## IV.

Starr's complaint also alleges, separate from its breach of warranty claims, that Mountaire is strictly liable for selling "raw chicken products to AdvancePierre in a defective condition that was unreasonably dangerous in a way not contemplated or expected by users and consumers" in violation of Me. Rev. Stat. tit. 14, § 221. Section 221 allows a plaintiff to recover in tort from a seller "for physical harm" to the plaintiff "or to his property" resulting from "goods or products [sold] in a defective condition unreasonably dangerous to the user or consumer or to his property." Id.

A plaintiff "alleging damage or injury from a faulty or defective product" may, as Starr did here, bring "[a] lawsuit [under Maine law] . . . based on a number of theories,

- 15 -

including . . . strict liability . . . and breach of warranty." Oceanside at Pine Point Condo. Owners Ass'n v. Peachtree Doors, Inc., 659 A.2d 267, 269-70 (Me. 1995) (citation and footnote omitted). Under either theory, though, the plaintiff still must show that the product at issue was "defective" under Maine law.

Here, as we have explained, the complaint does not sufficiently plead facts permitting us to plausibly infer that the raw chicken that Mountaire sold to AdvancePierre was contaminated with a type of salmonella that could not be eliminated by proper cooking and thus was defective under Maine law.[2] Nor does Starr contend that its strict liability claim may survive if we conclude that the complaint fails to allege facts that could suffice to show that the chicken supplied by Mountaire to AdvancePierre was defective.

We thus affirm the District Court's dismissal of Starr's strict liability claim on this basis alone. See MacDonald v. Town of Eastham, 745 F.3d 8, 11 (1st Cir. 2014) ("We are not bound by the district court's reasoning but, rather, may affirm an order of dismissal on any ground evident from the record."). We therefore do not reach the question whether the District Court correctly

---

[2] As we noted earlier, the parties do dispute whether the "foreign-natural" test, see Kobeckis, 225 A.2d at 423, or the "reasonable expectation" test, see Estate of Pinkham, 55 A.3d at 5, applies under Maine law. But, neither party suggests that chicken that contains salmonella that can be killed by proper cooking methods is "defective" under either test.

- 16 -

determined that "[e]ven if . . . Starr's strict liability claim could survive these [defective product] tests, it is further barred by the economic loss doctrine."  Starr Surplus Lines, 2018 WL 3676839, at *3-4.

**V.**

For the foregoing reasons, we affirm the District Court's dismissal of Starr's breach of warranty and strict liability claims.  Each party shall bear its own costs.