# United States Court of Appeals
## For the First Circuit

No. 18-2154

IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR
PUERTO RICO, as representative for the Commonwealth of
Puerto Rico; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR
PUERTO RICO, as representative for the Puerto Rico Highways
and Transportation Authority,

Debtors.

---

HON. WANDA VÁZQUEZ-GARCED (in her official capacity);* THE
PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY,

Plaintiffs, Appellants,

v.

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO;
JOSÉ B. CARRIÓN, III; ANDREW G. BIGGS; CARLOS M. GARCÍA;
ARTHUR J. GONZÁLEZ; JOSÉ R. GONZÁLEZ; ANA J. MATOSANTOS;
DAVID A. SKEEL, JR.; NATALIE A. JARESKO,

Defendants, Appellees,

OFFICIAL COMMITTEE OF UNSECURED CREDITORS,

Intervenor, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Laura Taylor Swain, U.S. District Judge**]

---

* Pursuant to Fed. R. App. 43(c)(2), Hon. Wanda Vázquez-Garced
is substituted for former Governor Ricardo Rosselló Nevares.

** Of the Southern District of New York, sitting by
designation.

Before

Howard, <u>Chief Judge</u>,
Torruella and Kayatta, <u>Circuit Judges</u>.

---

Peter Friedman, with whom <u>John J. Rapisardi</u>, <u>Elizabeth L.</u> <u>McKeen</u>, <u>O'Melveny & Myers LLP</u>, <u>Luis C. Marini-Biaggi</u>, <u>Carolina</u> <u>Velaz-Rivero</u>, and <u>Marini Pietrantoni Muñiz LLC</u> were on brief, for appellants.

Timothy W. Mungovan, with whom <u>John E. Roberts</u>, <u>Guy Brenner</u>, <u>Martin J. Bienenstock</u>, <u>Stephen L. Ratner</u>, <u>Mark D. Harris</u>, <u>Kevin J.</u> <u>Perra</u>, and <u>Proskauer Rose LLP</u> were on brief, for defendants, appellees.

---

December 18, 2019

**KAYATTA**, **Circuit Judge**.  The Puerto Rico Oversight, Management, and Economic Security Act ("PROMESA") established a board known as the Financial Oversight and Management Board for Puerto Rico ("the Board").[1]  Under PROMESA sections 201 and 202 ("Sections 201 and 202"),[2] the Board developed and certified both a fiscal plan for the Commonwealth and a Commonwealth budget for fiscal year 2019-2020.  Several provisions of both the fiscal plan and the budget elicited objections from the Governor of Puerto Rico, who, together with the Puerto Rico Fiscal Agency and Financial Advisory Authority (a Commonwealth entity), filed a complaint against the Board in the United States District Court for the District of Puerto Rico, seeking a declaration striking those provisions.

One of the provisions to which the Governor objected barred "reprogramming": i.e., spending during the 2019-2020 fiscal year money that had been authorized but not actually spent in a prior fiscal year.  In challenging the bar on reprogramming, the Governor argued that because the Board had unsuccessfully recommended that the Governor agree to such a bar, the Board could not thereafter adopt the bar as binding over the Governor's objection.  In ruling on the Board's motion to dismiss the

---

[1]  48 U.S.C. § 2121.

[2]  48 U.S.C. §§ 2141–2142.

- 3 -

complaint for failure to state a claim, the district court sustained the bar on reprogramming, deciding as a matter of law that the Board did not surrender its powers to act unilaterally regarding a policy proposal by first seeking agreement from the Governor and that, in any event, the Board's "certification of a budget under PROMESA precludes reprogramming of previously-authorized expenditures from prior years." In re Fin. Oversight & Mgmt. Bd. for P.R., No. 18-ap-080, at 5-6 (D.P.R. Oct. 9, 2018) (order certifying certain aspects for interlocutory appeal). The district court did not dismiss the complaint as it applied to subjects other than the Board's ability to impose rejected recommendations and to bar reprogramming. It nevertheless certified for immediate appeal its dismissal of paragraphs 78 and 79 of Count I of the Complaint and paragraphs 88 and 91 of Count II. By the time of oral argument on appeal, the parties' positions more precisely limited the scope of appeal to the legal rulings upon which the district court relied in rejecting the Governor's challenge to the reprogramming bar.

We accept jurisdiction over this interlocutory appeal pursuant to PROMESA section 306(e)(3), which, among other things, authorizes "an immediate appeal" when it "may materially advance the progress of the case or proceeding in which the appeal is taken." 48 U.S.C. § 2166(e)(3)(A)(iii). The potential use by the Government of so-called reprogrammed funds is apparently a subject

of continuing dispute, and its resolution now will likely assist the district court in assessing other existing and future disputes regarding the relationship between the Board and the Governor.

## I.

We review a dismissal for failure to state a claim de novo. Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015). The reviewing court "accept[s] as true all well-pled facts alleged in the complaint and draw[s] all reasonable inferences in [the plaintiff's] favor." Evergreen Partnering Grp., Inc. v. Pactiv Corp., 720 F.3d 33, 36 (1st Cir. 2013). A Rule 12(b)(6) motion fails if the complaint contains "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## A.

The Governor's argument on this appeal rests in the first instance on the Governor's view of how PROMESA section 205 ("Section 205")[3] works. Subsection 205(a) allows the Board to submit at any time "recommendations to the Governor or the Legislature on actions the territorial government may take to ensure compliance with the Fiscal Plan, or to otherwise promote the financial stability, economic growth, management responsibility, and service delivery efficiency of the territorial

---

[3]  48 U.S.C. § 2145.

government." The rest of Section 205 contains no limitations on the nature or substance of the recommendations that the Board may make. Subsections (a)(1)-(10) instead provide a non-exclusive list of ten subject matters about which the Board may make recommendations. Subsection 205(b) then requires the Governor or the legislature, as the case may be, to accept or reject such recommendations and to provide explanations for rejecting any recommendations that the territorial government otherwise could have agreed to. The Governor contends that the Board had previously recommended under subsection 205(a) a prohibition on spending reprogrammed funds, among other things, and that the Governor rejected that recommendation. Therefore, the Governor reasons, the Board could not turn around and unilaterally adopt the rejected recommendation as a binding policy in the certified fiscal plan or budget.

This reasoning is puzzling to say the least. There is no language at all in Section 205 suggesting that, by first seeking the Governor's agreement on a matter, the Board somehow loses whatever ability it otherwise had to act unilaterally on the matter. The Governor points, instead, to subsection 201(b)(1)(K), allowing the Board to "adopt appropriate recommendations" in developing and submitting a fiscal plan. Again, though, we see nothing in this language that precludes the Board from adopting a

- 6 -

rejected recommendation if it otherwise has the power to adopt the recommended action on its own.

Nor do we agree with the Governor's contention that we should draw a salient negative inference from the fact that an early version of the draft bill that became PROMESA gave the Board broader power than it now has. See S. 2381, 114th Cong. (2015); House Discussion Draft, 114th Cong. (Mar. 29, 2016). The Board's argument here limits its asserted authority to the law as enacted, making no claim to any broader powers considered but not enacted by Congress.

We also reject the Governor's claim that the Board's reading of the statute renders Section 205 a "dead letter." There are certainly policies and actions that can be adopted and pursued only with the Governor's approval. And even with respect to matters on which the Board needs no consent, Section 205 serves as a reminder that PROMESA favors collaboration when possible. PROMESA encourages the Board to engage in an iterative exchange with the Governor in developing a fiscal plan and budget. Indeed, subsections 201(c), (d)(2), and (e)(2) call for the Governor to prepare the first draft of a fiscal plan, while nevertheless reserving to the Board the ultimate power to "develop and submit" a fiscal plan, which is then deemed approved by the Governor.[4] To

---

[4] Section 202 contains similar provisions for budgets.

rule that the Board loses its power to act unilaterally on a matter by first seeking the Governor's agreement would be to discourage the Board from first seeking common ground and listening to the Governor's reaction before finally deciding to act. Nothing to which the Governor points persuades us to construe the statute in such a manner.

In short, even assuming that the Board first sought the Governor's agreement to adopt a policy (here a ban on reprogramming),[5] the Board in doing so certainly lost no power that it otherwise might have had to include that policy in the fiscal plan (or budget).[6]

**B.**

As the foregoing makes clear, any evidence that the Board recommended that the Governor adopt a ban on certain reprogramming can make no difference to the outcome of this appeal. The relevant question, instead, is whether the Board in the first instance possessed the authority to impose unilaterally such a ban. As to that question, the Governor contends that the Board lacks such authority for three reasons: (1) PROMESA section 204(c)

---

[5]  It appears doubtful from the record before us that the Board ever actually recommended that the Governor agree to any bar on action concerning reprogramming.

[6]  The Governor does not seem to have disclosed exactly what funds its office proposes to use for what purposes.

("Section 204")[7] implicitly rejects the notion of a categorical bar to reprogramming because it allows the territorial government to, in the Governor's words, "seek reprogramming at any time," albeit subject to the Board's approval; (2) the reprogramming suspension provisions are contrary to existing Puerto Rico statutes and Article III, section 18 of the Puerto Rico Constitution; and (3) the reprogramming suspension provisions are impermissible "substantive budget resolutions."

These arguments all miss the mark. As the district court explained, PROMESA prohibits the Governor from spending any funds that are not budgeted regardless of whether the recommendation had been adopted. We quote the district court's cogent explanation:

> It beggars reason, and would run contrary to the reliability and transparency mandates of PROMESA, to suppose that a budget for a fiscal year could be designed to do anything less than comprehend all projected revenues and financial resources, and all expenditures, for the fiscal year. Since a certified budget is in full effect as of the first day of the covered period, means and sources of government spending are necessarily rendered unavailable if they are not provided for within the budget. A prior year authorization for spending that is not covered by the budget is inconsistent with PROMESA's declaration that the Oversight Board-certified budget for the fiscal year is in full force and effect, and is therefore preempted by that statutory provision by force of Section 4 of PROMESA. Accordingly, the Fiscal Plan language regarding suspension of authority to approve off-budget reprogramming may well be

---

[7]  48 U.S.C. § 2144.

superfluous, and in any event merely has the same effect as PROMESA's explicit provisions. The exclusive scope of a certified budget also makes pellucid the reason that Section 204(c)'s reprogramming provision speaks only to the then-current fiscal year -- the budget does not make any other resources available for reprogramming.

In re Fin. Oversight & Mgmt. Bd. for P.R., 330 F. Supp. 3d 685, 704 (D.P.R. 2018) (emphasis added).

In short, the district court concluded that PROMESA subsection 202(e)(4)(C) itself precludes the territorial government from reprogramming funds from prior fiscal years except to the extent such reprogrammed expenditures are authorized in a subsequent budget approved by the Board, and any Puerto Rico law to the contrary is preempted by virtue of PROMESA section 4. See 48 U.S.C. § 2103 ("The provisions of this chapter shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with this chapter."). Simply put, if a certified budget is to have "full force and effect," subsection 202(e)(3)(C), there can be no spending from sources not listed in that budget, regardless of what any territorial laws say. Here, it is undisputed that the budget adopted by the Board does not authorize whatever unknown expenditures that the Governor apparently has in mind. The fact that subsection 204(c)(1) allows the Governor to "request" a reprogramming of "any amounts provided in a certified Budget"

simply confirms that the final choice whether to allow reprogramming rests with the Board.  <u>In re Fin. Oversight & Mgmt. Bd. for P.R.</u>, 330 F. Supp. 3d at 704 (emphasis in original) (quoting 48 U.S.C. § 2144(c)).[8]  And because the Governor cannot reprogram funds, at least without the Board's express permission, it is irrelevant whether the proposals are "substantive budget resolutions."  We therefore agree with the district court that the reprogramming provisions in the fiscal plan and budget are at worst superfluous and are, in any event, entirely valid as consistent with PROMESA, so the Governor's arguments fail.

## II.

For the foregoing reasons, we <u>affirm</u> the district court's dismissal of the reprogramming suspension provision challenges, and we <u>remand</u> for further proceedings.

---

[8]  We do not address the possibility that the Board may amend a budget to make provision for use of unspent funds that the Board identifies.